MALCO MANUFACTURING COMPANY, a Partnership, Malco Manufacturing Company, Inc. and Amphenol Corporation

v.

ELCO CORPORATION.

Civ. A. Nos. 30451, 33985.

United States District Court
E. D. Pennsylvania.

Oct. 30, 1969.

John J. McAleese, Jr., Synnestvedt & Lechner, Philadelphia, Pa., Erwin C. Heininger, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., Roy E. Hofer, Hume, Clement, Hume & Lee, Chicago, Ill., for plaintiffs.

Henry N. Paul, Jr., Frank J. Benasutti, Paul & Paul, Philadelphia, Pa., Nathan Lavine, Adelman & Lavine, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

There are four discovery motions by the defendant, Elco Corporation, presently before the Court. They involve motions for the production of documents, to compel responsive answers to interrogatories and to require a certain witness to answer questions upon oral deposition.

With respect to the defendant's motion for the production of certain documents,[1] it is the defendant's position that if the documents were ever protected by the attorney-client privilege, such privilege has been waived by plaintiff Malco's conduct in that plaintiff while answering defendant's interrogatories, revealed the gist of certain communications and, thereby, effected a partial disclosure of the contents.[2]

The plaintiff asserts four grounds upon which this Court should deny defendant's motion; first, that the answers to the interrogatories merely identify the existence of privileged communications and, therefore, plaintiff was merely fulfilling an obligation which the law required of it; second, that plaintiff expressly negated the allegations of waiver by an express reservation of right to assert such privilege contained in a footnote to the answers in question; third, that the defendant is attempting, through an irrelevant issue, to bootstrap itself into plaintiff's privileged communications; and fourth, that if the Court

should find such a waiver, the waiver of one privileged communication does not waive all privileged communications and, therefore, defendant's motion is far greater in breadth than the alleged waiver.

■ With respect to the plaintiff's first contention that its responses merely identified the existence of privileged communications, it is concluded that it is without merit only as to plaintiff's answer involving the alleged untruthfulness of Mr. Edward I. Conlon. It appears that Mr. Conlon had once been considered the sole inventor of the patent previously involved in this suit,[3] but that he had allegedly been untruthful as to his contribution to the subject matter of the patent. Reading the plaintiff's answers in question, together with the depositioin of Mr. Raymond S. Winters, the Secretary of plaintiff Malco Corporation and the individual who signed the interrogatory answers on its behalf, it is apparent that the answers do more than identify the existence of a privileged communication. They disclose information pertaining to the contents of such communications and, therefore, must be considered as a waiver of the privilege. See Rosenfeld v. Ungar, 25 F.R.D. 340 (S.D.Iowa 1960).

This, necessarily, leads to a consideration of the plaintiff's second contention, i. e., the express reservation of the privilege contained in a footnote to the answers in question negates the allegation of waiver.

■ The general rule is that the privilege with respect to communications between a client and his attorney is the privilege of the client alone, and that it may be voluntarily waived by the client testifying or otherwise alluding to the substance or content of the privilege communication, Hunt v. Blackburn, 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888).

---

1. See enumerated list of documents contained in defendant's Motion for Production of Documents.

2. See Plaintiff's Answers to Defendant's Interrogatories Numbers 46 and 47.

3. The patent No. 2,995,617 was dedicated to the public on January 27, 1969.

■ To the extent that a party answers an interrogatory relating to the contents of a privileged communication and makes no objection thereto, the right to assert such privilege is waived. 4 Moore, Federal Practice, § 33.29[3] at 2420.8 (2d ed. 1968), citing Munzer v. Swedish American Line, 35 F.Supp. 493 (S.D.N.Y.1940).

■■ A statement purporting to reserve a claim of privilege cannot be given effect when it is followed by statements or conduct which, in fact and in law, constitute a waiver of such privilege. Once a party has made a disclosure without objection, the only question remaining is whether it constitutes a waiver, not whether a prior reservation negates the legal consequence of one's own purposeful and voluntary act. Since this Court has determined that the disclosure revealed the gist of the contents of a privileged communication, such disclosure therefore constituted a a waiver of the privilege.

■ With respect to the question of relevancy, it is important to understand one of the main thrusts of defendant's amended counter-claim for violation of the anti-trust laws. The gist of that part of the amended counter-claim is that plaintiff knowingly misrepresented to the Patent Office the identity of the rightful inventors of the patent and thereby monopolized trade through the assertion of a fraudulently obtained pat-

The relevancy of the documents presently sought is therefore readily apparent.

The plaintiff's fourth contention has been disposed of in the above discussion, and is consistent with that determination.

It is therefore concluded that the plaintiff has waived its right to assert the attorney-client privilege with respect to those communications relating to Mr. Edward I. Conlon's alleged untruthfulness concerning his contribution to the subject matter of the patent.

Turning now to defendant's motion to compel responsive answers to certain interrogatories [4] and defendant's amendment thereto,[5] with the exception of Interrogatories Nos. 151 and 153, the issue essentially involves a question of the relevancy of the information sought with respect to the allegations contained in defendant's amended counter-claim.

Plaintiff Amphenol Corporation [6] contends that the defendant has abandoned those allegations which pertain to the information sought by the interrogatories in question. This, it contends, occurred when defendant amended its original counter-claim to include an anti-trust claim for the fraudulent procurement of the patent based upon the decision in Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).[7]

■ After examining the interrogatories in question and the defendant's amended counter-claim, the Court concludes that the information sought relates to concerted anti-competitive activity of plaintiffs, and that such activity still remains a vital issue in defendant's amended anti-trust counter-claim.[8]

---

4. See Defendant's Motion to Compel Responsive Answers to Its Interrogatories Nos. 114, 119, 120 and 121. Interrogatory No. 114 has been answered by plaintiff and, therefore, is no longer included in this motion.

5. See Amendment to Defendant's Motion to Compel Responsive Answer to Interrogatories to include Interrogatories Nos. 151, 153, 157, 159 and 160.

6. Amphenol Corporation was acquired by Bunker-Ramo Corporation and has now taken the name of that corporation.

7. In *Walker* the Court in essence held that where a patent obtained by fraud is used to exclude other from the market through the institution of law suits or threat thereof, and thus monopolize a part of the trade or commerce, such activity may be the subject of a treble damages anti-trust suit.

8. See paragraphs 7 and 9 of Defendant's Amended Counter-Claim.

The requested information is sought for the purpose of showing that plaintiffs, after pooling their patent interests in self-locking terminal devices and agreeing to relinquish their individual rights to license others,[9] became essentially a single source for the supply of self-locking terminal connectors. Defendant contends that this activity, coupled with joint prosecutions of those infringing the patent which defendant alleges was fraudulently procured, had the effect of virtually eliminating competition and unreasonably restraining trade.

■ Interrogatories Nos. 151 and 153 inquire as to when and by whom an investigation was first conducted on behalf of Plaintiff Amphenol into the matter of the alleged fraudulent procurement of the patent. The requested information regarding Amphenol's knowledge of an investigation into the matter of misrepresentations made to the Patent Office in order to secure the patent, goes directly to the issue of whether plaintiffs have acted to maintain and enforce a patent which they knew was fraudulently obtained.

The Court concludes that the information sought by the two interrogatories does not encompass an attorney's work product and, therefore, no privilege exists upon which plaintiffs may refuse to answer. Defendant has requested no documents, statements, or other tangible evidence pertaining to the investigation in question. Nor has it asked that any opinion, conclusion or impression of an attorney be disclosed. Defendant merely seeks to establish the date when such investigation occurred and the names and addresses of officers and employees of plaintiff Amphenol other than its attorneys who participated in such investigations.

This information is a proper subject of discovery and defendant is entitled to have these Interrogatories answered.

Finally, with respect to defendant's motion to compel J. Frank Leach, an officer of plaintiff Amphenol Corporation, to answer certain questions which were asked of him upon oral deposition, it is important to note that the questions put to Mr. Leach were identical with those of the disputed Interrogatories. Since this Court has concluded that the disputed Interrogatories should be further answered, it would appear unnecessary to require a repetition of the same answers by Mr. Leach. The Court, therefore, concludes that this motion should be denied.

each party acquired an option to obtain a half interest in improvement applications filed by the other, and each party agreed that they would not license any interest in said self-locking terminal devices to any other person or entity.

---

9. By agreements dated July 1 and July 29, 1960, Malco agreed to assign a half interest in the patent in suit to Amphenol;