**CHUBB INTEGRATED SYSTEMS LIMITED, Plaintiff,**

v.

**The NATIONAL BANK OF WASHINGTON, et al., Defendants.**

**Civ. A. No. 82–3478.**

United States District Court, District of Columbia.

July 9, 1984.

On Request for Documents Oct. 2, 1984.

54

George Vande Sande, Pollock, Vande Sande & Priddy, Washington, D.C., for plaintiff.

Stuart A. White, New York City, pro hac vice.

Alan S. Mark, Verner, Liipfert, Bernhard & McPherson, Washington, D.C., Harold E. Meier, Herbert J. Hammond, Gardere & Wynne, Dallas, Tex., for defendants.

MEMORANDUM OPINION

JEAN F. DWYER, United States Magistrate.

The parties are before the Court to resolve certain discovery disputes; specifically, defendants' motion to compel production of documents and answers to interrogatories, and plaintiff's response and objections thereto. The production of documents issue involves a question of privilege. This Court will deal with that issue separately after an *in camera* inspection of the documents in question. Accordingly, we consider only the outstanding interrogatories.

Defendants have conditionally withdrawn their request to compel answers to interrogatories nos. 88, 90, 91; 135, 137, 138; 31, 33, 34; 9(b–c), 11(b–c), 12(b–c), and 126(a), 128(a), and 129(a), based on plaintiff's conditional withdrawal of patent infringement complaints on patent nos. 3,629,834 ('834); 3,575,271 ('271); and 3,657,521 ('521). Remaining at issue are interrogatories nos. 87 and 89, 115 and 116, 134, 136 and 139, 30 and 32, 125(a) and 127(a), 8(b–c) and 10(b–c).

This case arises out of a complaint for alleged infringement of several patents held by plaintiff, Chubb Integrated Systems Limited (Chubb). For their part, defendants, National Bank of Washington and Docutel/Olivetti Corp. (NBW/Olivetti), maintain that for a variety of reasons, there has been no patent infringement. For example, they argue the patents are invalid, and accordingly there was no infringement. Alternatively, they contend that any recovery is barred by laches or estoppel. In this regard, defendants seek to compel discovery in three broad categories: (1) sales information relevant to the commercial success of plaintiff's patented inventions; (2) use, sales and publication information relevant to the requirements of patentability under Title 35 of the United States Code; and (3) the basis for plaintiff's belief that the patents had been infringed and when that conclusion was first reached.

I

A. *Sales Information* [1]

Defendants' interrogatories nos. 87(a–i) and 89(a–i) seek information about the sales of machines embodying the inventions of the patents in suit. Plaintiff refuses to supply any information of its sales in the United States. Plaintiff contends it will not rely on its U.S. sales as an element of proof of the non-obviousness of the inventions claimed in the patents. Plaintiff further observes that if it chooses to use its European sales figures in support of non-obviousness, it will provide answers only to certain subparts (a, g, h, and i). Chubb maintains that the remaining subparts (b–f) are not properly discoverable. Plaintiff's objection is based on two grounds. Initially, plaintiff argues that information such as identification of customers, and sales to each customer, are not relevant to establishing commercial success. Plaintiff also contends that such information is highly proprietary.

The U.S. sales figures are clearly discoverable. The fact that plaintiff does not plan to use them to support its case does not prevent defendants from obtaining discovery of those figures, so long as they are relevant to any part of the litigation. Fed. R.Civ.P. 26(b)(1) provides in pertinent part "parties may obtain discovery regarding any matter ... relevant to the subject matter involved in the pending action, whether it relates to a claim or defense of the party seeking discovery or the claim or defense or defense of any other party...." In the instant case, plaintiff's United States sales figures may be relevant to one of the defenses asserted by defendants.

 NBW/Olivetti raise the affirmative defense of patent invalidity. They allege the invention was obvious. Case law

---

1. The Court is mindful of plaintiff's letter of February 10, 1984 in which plaintiff said that it will provide a separate response to defendants' questions relating to commercial success. However, the letter does not expressly withdraw all objections levied against defendants' interrogatories. Therefore, we will rule on the objections as they are in the record.

and statutes make it clear that "obviousness" of patent claims is relevant to patent invalidity. *See* 35 U.S.C. § 103 (1982); *Graham v. John Deere Co.*, 383 U.S. 1, 12, 86 S.Ct. 684, 691, 15 L.Ed.2d 545 (1966); *Continental Oil Co. v. Cole*, 634 F.2d 188, 196 (5th Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 124, 70 L.Ed.2d 106 (1981). It is equally well settled that commercial success of an alleged invention is an indicium of "obviousness" or "non-obviousness", albeit a secondary consideration. *Graham v. John Deere Co.*, 383 U.S. at 17, 86 S.Ct. at 694; *see also Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 338 (2d Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1500, 75 L.Ed.2d 931 (1983), and *Whitley v. Road Corp.*, 624 F.2d 698, 701 (5th Cir.1980). Sales information is a relevant factor in a determination of commercial success or a lack thereof. *See Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed.Cir.1983) (Markey, C.J.) (the court noted that the number of units sold is some evidence of commercial success, as well as market share and market growth); and *In re Sernaker*, 702 F.2d 989, 996 (Fed.Cir. 1983) (in an appeal from a patent rejection the court found sales to be an element of commercial success and evidence of non-obviousness). Accordingly, Chubb's sales are relevant to its commercial success and therefore relevant to defendants' claim of obviousness.

Determining that sales information is generally relevant to "obviousness" does not end our inquiry. We must consider whether the specific information sought in the various subparts is relevant to commercial success. Courts have indicated that the following areas of inquiry are probative of commercial success: volume of sales, evidence of share in the market place, growth in market share, replacing earlier units sold by others, dollar amounts, nexus between sales and the merits of the invention, evidence that the applicant has been able to license the invention and evidence that the licensees have been able to sell the product. *Kansas Jack*, 719 F.2d at 1151; *In re Sernaker*, 702 F.2d at 996. With this in mind, we consider the subparts in question.

■ Only subpart (a), which seeks volume of sales, falls squarely within the type of information discussed in *Kansas Jack* and *In re Sernaker*. Accordingly, that information should be provided. Subpart (b) seeks to determine without description or limitation, "each customer". The request is ambiguous at best. However, to the extent that it seeks the number of customers, but not the names, it is an appropriate inquiry. On the other hand, subparts (c), (d), and (e) (which seek yearly sales broken down by customer, yearly profit from sales, and all contracts relating to sales), are not likely to lead to evidence of market share, growth in the market place, etc., and therefore they are not probative of commercial success. We will not require Chubb to answer subparts (c), (d) and (e) at this time. Consistent with this rule, plaintiff's response to subpart (f) (which requests each document relating to or identifying persons having knowledge of subparts (a)–(e)), shall be limited to documents relating to or identifying persons having knowledge of annual volume of sales under subpart (a) and the number of customers under subpart (b).[2]

We believe that the limitations we have placed on the foregoing interrogatories should assuage plaintiff's concerns about the proprietary nature of the information requested. In the future, if the names of the customers, or the other information, become of consequence to the litigation, the parties may advise the court and we will proceed accordingly.

Defendants' interrogatories nos. 134 and 136 inquire whether Chubb is currently selling automated teller machines (ATMs)

---

**2.** Subparts (g), (h) and (i) seek advertising information. Plaintiff does not object on the ground that the information is not relevant to the litigation. To these subparts plaintiff objects only that it is not required to disclose its U.S. sales information. For the reasons above, *supra,* p. 56, relevant sales information is discoverable even though plaintiff does not plan to use its U.S. sales figure. Accordingly, subparts (g), (h) and (i) must be answered.

covered by the patents in suit. Chubb objects to the interrogatories claiming that the requested information is not relevant to any issue in the litigation, nor is it likely to lead to relevant information. We think plaintiff takes too narrow a view of relevance.

■ "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251, 254 (N.D.Ill.1978). Unquestionably, information regarding Chubb's current sales of ATMs is relevant to the subject matter of the pending action. Current sales are indicative of the commercial success of plaintiff's inventions. This alone marks the inquiry as relevant to the issue of patent validity. (*See* discussion, *supra*, p. 57).

Interrogatories nos. 115 and 116 request the identity of every model of ATMs manufactured by Chubb or for Chubb, and the beginning and ending dates of the manufacture, use, sale and/or lease of each model, since 1965. Chubb answered in part, supplying the information for the period 1965–1970. However, plaintiff refuses to supply any information after 1970. Plaintiff argues that the information is not relevant. Once again, we find plaintiff's view of relevancy is too restrictive.

In *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292 (E.D.Pa.1980), the court considered an objection to an interrogatory which spanned more than fifty years. The court allowed the discovery stating "the selected time frame is not wholly unreasonable or irrelevant". *Id.* at 296. The court concluded that where these tests are satisfied, a request for information should be considered relevant and therefore discoverable. *Id.* In the case at bar, these tests are satisfied.

We cannot find the period after 1970 wholly unreasonable or irrelevant. Post patent commercial success is a common area of inquiry in patent infringement litigation. Here, patents '904 and '527 were issued in 1970. It follows that production and sales of ATMs after 1970 are both reasonable and relevant.

■ Furthermore, plaintiff does not explain why the period after 1970 is irrelevant or wholly unreasonable. General objections are not useful to the court ruling on a discovery motion. Nor does a general objection fulfill plaintiff's burden to explain its objections. *See Fonseca v. Regan*, 98 F.R.D. 694, 700 (E.D.N.Y.1983) (the party resisting discovery must explain and support its objections). Chubb's bare objection, that the requested information is "irrelevant", does not meet the standard for a successful objection. Accordingly, plaintiff is directed to answer fully interrogatories nos. 115 and 116.

### B. Interrogatories Relevant to Patentability Under 35 U.S.C. § 102

■ Defendants' interrogatories nos. 30 and 32 request information about the uses and sales of machines covered by the patents '904 and '527 prior to the dates plaintiff filed for U.S. patents. To the extent that these interrogatories request information relative to a first sale occurring after the filing dates of plaintiff's United Kingdom patent applications, but before its corresponding United States filing dates, plaintiff makes three objections—relevancy, repetition, and burdensomeness.[3]

#### (1) Relevancy

■ Plaintiff argues that the information defendants seek cannot invalidate the patent under 35 U.S.C. § 102.[4] Plaintiff contends it is *prima facie* entitled to the

---

**3.** The Court notes that plaintiff's counsel has requested defendants provide some legal authority in support of its position, and some credible evidence which may tend to rebut plaintiff's entitlement to the U.K. filing dates. Again, plaintiff misplaces the burden of proof. As the party resisting discovery, plaintiff bears the bur-

den of demonstrating that the information sought is not legally relevant.

**4.** 35 U.S.C. § 102 provides the conditions when prior public knowledge, use, and/or sales of a claimed invention bars patentability in the U.S.

benefit of the U.K. filing dates. Chubb further argues that as a matter of law, defendants would have to rebut plaintiff's entitlement to the U.K. filing dates before the information could be admitted at trial. Based on this reasoning, plaintiff concludes the interrogatories are irrelevant. We disagree.

██ We are unpersuaded by plaintiff's argument for two reasons. Initially, we note that defendants' request falls within the scope of discovery permitted by the Federal Rules of Civil Procedure. The concept of relevancy is broadly construed at the discovery stage of an action, and discovery rules are to be accorded liberal treatment. *See, e.g., Dykes v. Morris,* 85 F.R.D. 373, 375 (N.D.Ill.1980). Rule 26(b) provides that information is discoverable if it is "relevant to the subject matter involved in the pending action...." Unquestionably, defendants' interrogatories nos. 30 and 32 are relevant to the subject matter of the action. The questions seek information to support the allegations in paragraphs 16 and 18, affirmative defenses of defendant NBW's answer and in the same paragraphs of defendant Docutel/Olivetti's answer.

██ Whether this information is found to be admissible at trial has little bearing on the issue of discoverability. Rule 26(b) makes a clear distinction between information that is relevant to the subject matter for pretrial discovery and the ultimate admissibility of that information at trial. *See* Fed.R.Civ.P. 26(b)(1), advisory committee note, 1970 Amendment. Admissibility at trial is not the yardstick of permissible discovery. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

██ We are troubled by a second aspect of Chubb's objection. While plaintiff's argument is couched in terms of relevance, we feel that plaintiff implicitly challenges the sufficiency of defendants' affirmative defense. In ruling on questions of discovery, typically, courts do not determine the legal sufficiency of claims and defenses. *See Apel v. Murphy,* 70 F.R.D. 651, 654 (D.R.I.1976); *Paramount Film Distributing Corp. v. Ram,* 15 F.R.D. 404, 405 (E.D.S.C.1954). The legal sufficiency of a claim or defense is appropriately challenged in a motion to strike, and a defense, until stricken, is valid. *See Humphreys Exterminating Co., Inc. v. Poulter,* 62 F.R.D. 392, 393 (D.Md.1974) (and cases cited therein).

██ It is, of course, within the court's discretion to deny discovery related to a patently insubstantial claim, for example, where the claim or defense appears baseless and the discovery would work a hardship on the answering party. *Apel v. Murphy,* 70 F.R.D. at 654; *see also* 4 J. Moore and J. Lucas, *Moore's Federal Practice* ¶ 26.56[1] (2d ed. 1983) at 26–125. We see no reason to bar discovery on these grounds in this case.

In the instant case, plaintiff does not assert that the defense is baseless. Rather, plaintiff claims that *prima facie* entitlement to the benefits of the U.K. filing dates renders the information inadmissible. This is an issue that will be resolved at trial. At this point in the litigation, we do not regard the defense proffered under 35 U.S.C. § 102 as "baseless".

Plaintiff makes an independent objection to this discovery on grounds of burdensomeness. We address it below.

### (2) *Repetition and Burdensomeness*

Chubb contends that the information sought in these interrogatories nos. 30 and 32 has long been made available to defendants during defendants' search of Chubb's document files in the U.K. during October-November, 1983. Chubb bases its objections of repetition and burden on this search. However, we do not think the mere fact that defendants undertook a document search supports plaintiff's claim.

██ Labelling plaintiff's effort as repetitious, does not support its objection. Standing alone, the fact that defendants conducted a search does not support plaintiff's claim of burdensomeness. An objec-

tion must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden. *See Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–297 (E.D. Pa.1980); *see generally*, 4A J. Moore and J. Lucas, Moore's Federal Practice ¶ 33.27 (2d ed. 1983). Plaintiff's objections do not reveal the nature of its burden. Without more, this Court cannot conclude that Chubb will be unduly burdened by the interrogatories. Accordingly, we reject this argument.

■ Finally, we note that plaintiff's refusal to respond to the above-mentioned interrogatories will effectively prevent defendants from pursuing a potential legal theory at trial. Our denial of defendants' discovery request would have a similar effect. We decline to do so. It is well settled that the court's decision should not have the effect of completely denying a party information that would be useful at trial. *Stevenson v. Melady*, 1 F.R.D. 329, 330 (S.D.N.Y.1940), *see also Donovan v. Prestamos Presto Puerto Rico, Inc.*, 91 F.R.D. 222, 223–24 (D.P.R.1981) (citing *Stevenson* ).

Because we reject Chubb's objections of relevancy, repetition, and burdensomeness, plaintiff is directed to provide a response to interrogatories nos. 30 and 32.[5]

## C. *Basis of Plaintiff's Infringement Claim*

Defendants' interrogatories nos. 8(a, b, c) and 10(a, b, c) ask plaintiff to (a) identify the patent claims which plaintiff contends have been infringed by defendant Docutel/Olivetti; (b) the facts known to plaintiff supporting the infringements alleged in (a); and (c) the identity of any documents supporting or referred to in subparts (a) and (b). Plaintiff answered subpart (a), providing a list of those patent claims which it believes the defendants' models infringe. Plaintiff did not answer subparts (b) and (c). Instead, plaintiff stated that it did not

have specific information concerning the structure and mode of operation of defendants' machines, products, or apparatuses to identify with certainty those claims which are infringed. In plaintiff's response to defendants' motion to compel, plaintiff added that it had just received from defendant, a few days prior to its answer, a replacement set of the materials from which the answer to subparts (b) and (c) would be deduced. Plaintiff requests that it be given sufficient time to examine the materials and to provide a supplement to its answer. (Plaintiff's response to defendants' motion to compel at 17–18).

■ Chubb's answer and reply is not responsive to the question. Fairly read, the question seeks facts within the knowledge of plaintiff *at the time* it answered the interrogatories. There should be no question that Chubb has information to support the allegation. Chubb must therefore disclose the information in answer to an interrogatory seeking the basis of the allegation. *Jewish Hospital Association of Louisville, Ky. v. Struck Construction Co.*, 77 F.R.D. 59, 60 (W.D.Ky.1978). Accordingly, plaintiff shall answer interrogatories 8(b, c) and 10(b, c). Further, this Court directs plaintiff seasonably to supplement its response to these interrogatories.

Similarly, NBW/Olivetti's interrogatories nos. 125(a) and 127(a) seeks the dates upon which plaintiff first believed, determined or concluded that each claim had been infringed. Chubb contends that it has answered these interrogatories. For their part, defendants maintain that Chubb's answers are incomplete and evasive. In support of this contention, defendants' counsel state that they have seen documents in the files of Chubb (currently withheld on the ground of privilege) which prove that Chubb first believed that defendant Docutel/Olivetti infringed some of its patents more than ten (10) years before this suit was brought.

---

5. The Court notes that plaintiff also objects to providing the information with respect to Speytec Ltd. However, it appears that defendants do not seek to compel that information. Accordingly, we do not address it here.

██ The Court observes that this information is central to the defense of laches proffered by defendants. To establish a successful laches defense, defendant must show that plaintiff was guilty of unreasonable delay prejudicial to the defendant. *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 843 (D.C.Cir.1982). It is therefore relevant to the subject matter involved in the pending action. In fairness, plaintiff does not deny that the requested information is a matter upon which discovery may be obtained. Chubb merely contends that it has already provided the requested information. This is contested by defendants and based on the record before us, we are in no position to resolve this dispute.

██ We remind the parties that they have a duty to provide true, explicit, responsive, complete and candid answers to interrogatories. *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 616, (5th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); *Evanson v. Union Oil Co. of California,* 85 F.R.D. 274, 277 (D.Minn.1979), *appeal dismissed,* 619 F.2d 72 (Emer.Ct.App.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 102, 66 L.Ed.2d 38 (1980) (the court found an implicit condition in any order to answer interrogatories is that the answer be true, responsive and complete); *Milner v. National School of Health Technology,* 73 F.R.D. 628, 632 (E.D.Pa.1977). This Court cannot look beyond the papers before it to determine whether plaintiff has complied with its legal duty, and we deny defendants' request to compel more complete answers from plaintiff. However, this Court cautions plaintiff to supplement its answers if in retrospect there exists other information relevant to the point in time at which the cause of action accrued.

## II

There is an outstanding third set of interrogatories which plaintiff has not answered. While they are not the subject of defendants' motion to compel, we feel it is appropriate to consider an issue plaintiff has raised.

Plaintiff contends that its February, 1984 motion pursuant to Rule 26(f) for a discovery conference has "had the effect of holding in abeyance any requirement to answer the third set of interrogatories ..." and therefore, "no basis exists for the Court's imposing sanctions against plaintiff by reason of plaintiff's not having answered these additional interrogatories." *See* plaintiff's supplemental response to defendants' supplemental memorandum of points and authorities in support of defendants' motion to compel, at p. 16. Fairly read, plaintiff argues that it has granted itself a protective order or an extension of time within which to answer the interrogatories. We decline to give that effect to a motion for a discovery conference.

Rule 26(f) provides for a discovery conference upon a motion which includes:

1. A statement of the issues as they then appear;

2. A proposed plan and schedule of discovery;

3. Any limitations proposed to be placed on discovery;

4. Any other proposed orders with respect to discovery; and

5. A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion....

A cursory review of plaintiff's Rule 26(f) motion indicates that plaintiff has complied with the requirements of the Rule. Plaintiff's motion specifically proposes under Rule 26(f)(4) that defendants' third set of interrogatories be included in a prohibition of additional interrogatories from pretrial discovery in this suit. We note that the third set was served on Chubb before it filed the motion for a discovery conference.

Rule 33(a) imposes a requirement that interrogatories must be answered or objected to within a fixed period of time after service. We cannot permit Chubb's proposed limitation in a Rule 26(f) motion to circumvent other rules of civil procedure, absent some authority to do so. Plaintiff

cites no authority in support of its novel approach, nor have we found any.

■ There are two exceptions to the Rule 33 duty to answer or object; when the court grants an application for the extension of time or a protective order under Rule 26(c). These avenues of relief have always been available. Again, we find no authority which indicates that a Rule 26(f) motion is a third alternative equivalent to seeking and actually obtaining an extension of time in which to answer or a protective order. Accordingly, we reject plaintiff's argument.

■ Finally, we caution Chubb that the failure to object within the time fixed for its answer generally constitutes a waiver of any objection. *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981); *Shenker v. Sportelli*, 83 F.R.D. 365, 367 (E.D.Pa.1979); *see also* 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2173 at 544 (1970).

An Order of even date is filed herewith.

## ORDER

Upon consideration of defendants' motion to compel, plaintiff's opposition thereto, oral argument thereon, and in accordance with the Memorandum Opinion filed herewith, it is by the Court this 9th day of July, 1984

ORDERED that defendants' motion to compel is hereby granted and denied in part. Plaintiff is hereby

ORDERED to answer interrogatories nos. 87(a), (b), and (f–i); 89(a), (b), and (f–i); 134 and 136, 115 and 116, 30 and 32, 8(a–c), 10(a–c), within fifteen (15) days of the date of this Order; and it is

FURTHER ORDERED that defendants' motion to compel as to interrogatories 87(c–e); 89(c–e); 125(a); and 127(a) is hereby denied.

## ON REQUEST FOR DOCUMENTS

The parties are before the Court on defendant's motion to compel production of documents and answers to interrogatories.

We issued a Memorandum Opinion on July 9, 1984, limited to the issues raised with respect to the interrogatories. The subject of this Memorandum Opinion is defendant's request for documents.

### Background

There are two groups of documents at issue. The first group consists of documents which Chubb refuses to produce on grounds of privilege. Plaintiff refuses to produce the second group of documents because it claims that defendant's request is overly broad and improperly asserted.

This Court heard argument on the motion, and we ordered the production of the allegedly privileged documents for *in camera* inspection. After careful consideration, defendant's motion is hereby granted and denied in part.

### I. *Documents Withheld on Claims of Privilege*

Briefly stated, the relevant facts are as follows:

On May 16 and August 29, 1983, defendant filed requests for documents from Chubb. Plaintiff agreed to permit defendant's counsel to inspect files in its offices in England. It specifically refused to permit the inspection of certain other files pending review for privileged information. The inspection took place between October 24 and November 2, 1983. During that time, defendant examined some 52,000 pages of documents and requested copies of approximately 14,000 pages, which plaintiff agreed to supply. Subsequent thereto, plaintiff withheld several of those documents claiming that the documents were protected from discovery because they contained privileged information. There was no agreement or representation that the documents would be subject to such a later review for privilege.

Defendants argue that the documents do not support a claim of privilege, but even if they could, plaintiff waived the claim when it permitted defendants to inspect the documents in England and when it disclosed the

very same files to a third party, NRC Corporation, Chubb's adversary in a parallel action.[1]

For its part, plaintiff maintains that the documents can support a claim of privilege and it contends that the document inspection by defendant in England is not a waiver. Chubb argues that waiver requires intent, and that its disclosure of a limited number of documents was not intentional, but rather, inadvertent. Plaintiff further contends that the documents did not lose their privileged status when they were produced in discovery to NRC Corporation because there was an agreement, in that action, that the documents could be reviewed for privilege after inspection, and because Docutel/Olivetti received copies of all the documents Chubb gave to NRC Corporation.

### Waiver

■ The attorney-client privilege is waived by any voluntary disclosure.[2] *In re Subpoenas Duces Tecum*, No. 83–2116, slip op. at 5 (D.C.Cir. July 10, 1984); *Transamerica Computer Co., Inc. v. International Business Machines Corp.*, 573 F.2d 646, 650–51 (9th Cir.1978) (*TCC v. IBM*). However, only disclosures which are "inconsistent with the adversary system" waive the protection of the work-product rule. *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C.Cir.1981), *citing United States v. American Telephone and Telegraph Co.*, 642 F.2d 1285, 1299–1300 (D.C.Cir.1980). Therefore, a waiver of the attorney-client privilege is not necessarily a waiver of work-product protection. This potential distinction does not occur in the instant case, however, because Chubb's disclosure was to its opponents. This is clearly inconsistent with the adversary system. Accordingly, if Chubb's inadvertent produc-

tion of documents constituted a waiver of the attorney-client privilege, it also constituted a waiver of the work-product privilege because the disclosure was to its adversary in litigation. *TCC v. IBM*, 573 F.2d at 647 n. 1.

■ Few cases have discussed the degree of disclosure necessary to constitute a waiver. Here, however, the mere fact that defendants had an opportunity to open a file drawer cannot constitute a "disclosure" of privileged information. We required defendants to submit to the Court all notes they took during the search, and an affidavit detailing both their inspection procedures and their knowledge of the documents in question. We will deem a document "disclosed" where defendant has learned the "gist" of the document's contents. *See Malco Manufacturing Co. v. Elco Corp.*, 307 F.Supp. 1177 (E.D.Pa.1969) (The answer to an interrogatory "revealed the gist of the privileged communication", constituting a waiver of privilege." *Id.* at 1179).

■ Actual disclosure of each specific document in issue is not the only means by which a waiver can occur. Voluntary production of certain privileged documents implies a waiver of all communications on the same subject. *See In re Sealed Case*, 676 F.2d 793, 809, 817 (D.C.Cir.1982); *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C.1981); *Marshall v. United States Postal Service*, 88 F.R.D. 348, 350 (D.D.C. 1980); *see also* 8 J. Wigmore, Evidence § 2327 (McNaughton Rev.1961).

■ There is a difference of opinion, however, on whether the concept of "implied subject matter waiver" applies only to attorney-client communications, or to work-product as well.[3] Our Circuit in *Sealed Case* found an implied waiver of work-prod-

---

**1.** *See* Defendant's Reply Brief, Exhibits D and E. These Exhibits purport to be a list of Chubb's files produced to NRC Corporation and to defendant here, an assertion Chubb does not deny. Upon comparison, the lists of files are nearly identical.

**2.** Voluntary disclosure means the documents were not judicially compelled.

**3.** *Compare United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (the testimonial use of work-product constituted waiver of all work-product of same subject matter), *with Duplan Corporation v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir.1976) ("[T]o the extent that a concept of subject matter waiver is applicable to Rule 26(b)(3) under the rationale of the *Nobles* case, ... we are of the opinion it

uct on the same subject, but specifically limited its holding to the facts of the case and indicated that it might not imply a waiver of work-product under different circumstances. *See Sealed Case,* 676 F.2d at 817. In its decision to imply a waiver of work-product, the court considered two factors. First, it considered the general principle that "courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege". *Id.* at 818. Second, the court evaluated whether the party's claim to work-product privilege was "necessary to maintain a healthy adversary system". Accordingly, we adopt the same two factors to test the validity of implying a waiver of work-product to the documents in the present action.

Having considered the criteria just described, we now turn to several specific questions which must be answered before the Court can appropriately rule on plaintiff's privilege claims. For clarification, the questions are as follows: (1) Can a foreign patent agent qualify for the attorney-client privilege?; (2) In the context of patent activities, what constitutes privileged information?; (3) Is intent an element of waiver of privilege in the discovery context?; (4) Does an agreement not to waive privilege in a parallel litigation protect the right to claim privilege of the same documents in this action?

### 1. *The Availability of the Attorney-Client Privilege to Foreign Patent Agents*

Generally, the attorney-client privilege attaches only if:

does not extend to a case such as this where there has only been inadvertent or partial disclosure in response to specific inquiries, in which no testimonial use has been made of the work-product." *Id.* at 1223); 8 C. Wright and A. Miller, Federal Practice and Procedure § 2024 at 209 (1970) ("But disclosure of some documents does not destroy work-product protection for other documents of the same character.").

**4.** Although these elements were articulated in 1950, the test remains widely recognized. *See Securities and Exchange Commission v. Gulf and Western Industries,* 518 F.Supp. 675, 681

[T]he asserted holder of the privilege is or sought to become a client; the person to whom the communication was made is a member of a court, or his [or her] subordinate, and in connection with this communication is acting as a lawyer; the communication relates to a fact of which the attorney was informed by his [or her] client, without the presence of strangers, for the purpose of securing primarily either an opinion of law or legal services or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and the privilege has been claimed and not waived by the client. *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950).[4]

The fact that a patent agent is not a "member of a court" does not, however, quickly dispose of this issue. The court in *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 391 (D.D.C.1978), modified the report of the master because the master concluded that the communications of a patent agent cannot receive the protection of the attorney-client privilege since a patent agent is not a member of the bar.

In the present action, Chubb claims attorney-client privilege for communications of its United Kingdom patent agent, Mr. G. Coles. The claim is based on two arguments. First, plaintiff urges the Court to give comity to the British Civil Evidence Act of 1968 § 15 (Patent Act of 1977), which provides protection from disclosure of certain patent agent communications. In the alternative, Chubb urges the Court

(D.D.C.1981); *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 383 (D.D.C.1978); *Underwater Storage Co., Inc. v. U.S. Rubber Co.,* 314 F.Supp. 546, 548 (D.D.C.1970); *see also Humphreys, Hutcheson and Moseley v. Donovan,* 568 F.Supp. 161, 175 (M.D.Tenn.1983); *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982); *In re Grand Jury Subpoenas Dated December 18, 1981, and January 4, 1982,* 561 F.Supp. 1247, 1251 (E.D.N.Y.1982); *United States v. Bank of California,* 424 F.Supp. 220, 225 n. 7 (N.D.Cal. 1976).

to find that Mr. Coles is an employee of the corporation, who happens to be a patent agent, and as an employee his communications with Chubb's United States counsel are privileged.

### a. *Comity to the British Civil Evidence Act of 1968*

■ We begin with the general rule that federal courts, deciding federal question cases, apply federal common law of privilege. *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3rd Cir.1982) (federal common law governed the availability of the accountant-client privilege in connection with alleged violations of the federal antitrust laws), *citing Gannet v. First National Bank of New Jersey*, 546 F.2d 1072, 1076 (3rd Cir. 1976) (federal common law governed availability of attorney-client privilege as asserted in connection with the Bank Secrecy Act of 1970, 12 U.S.C. § 1829b); 8 C. Wright and A. Miller Federal Practice and Procedure, Civil § 2016 at 123 (1970 and 1983 Supp.). Clearly, patent infringement actions are governed by federal statute. Therefore, we must apply federal common law in the instant case. This does not, however, end our inquiry. We must determine what the federal common law says about the availability of the attorney-client privilege to foreign patent agents when the foreign country would extend privilege to its patent agent's communications.

■ Federal courts give comity to foreign statutes governing the privileges of patent agents, when the communications relate solely to activities outside the United States. *Duplan Corporation v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1169 (D.S. C.1975), *accord Ampicillin*, 81 F.R.D. at 391. However, where the patent agent's communications "touch base" with the United States, U.S. law applies. *Id.* Accordingly, we cannot give comity to the British Civil Evidence Act of 1968, and we do not determine whether Mr. Coles' communications are privileged, based on his rights under the British statute. We must apply U.S. law.

■ There is diverging opinion among the federal courts when they delineate what our law says about the availability of privilege to patent agents when their communications touch base with the United States. Some courts do not recognize the attorney-client privilege for any patent agent communications, U.S. or foreign agents, when the communications relate to the United States. *See e.g., Duplan*, 397 F.Supp. at 1169, *accord Status Time Corp. v. Sharp Electronics Corporation*, 95 F.R.D. 27, 31–33 (S.D.N.Y.1982). On the other hand, there are courts which permit a claim of attorney-client privilege for patent agents, U.S. or foreign, upon an agent's proper registration with the U.S. Patent Office pursuant to 37 C.F.R. § 1.341(c) or (e). *See, e.g., Ampicillin*, 81 F.R.D. at 391; *Venitron Medical Products, Inc. v. Baxter Laboratories, Inc.*, 186 U.S.P.Q. 324, 325–26 (D.N.J.1975). We need not reconcile or otherwise resolve the alternative opinions. Mr. Coles' communications which relate to the U.S. are never privileged under the *Duplan* line of cases. The avenue of protection afforded by the *Ampicillin* school of thought is not available to Mr. Coles either, because he is not registered with the U.S. Patent Office.

### b. *Whether a Patent Agent is an Employee of the Corporation for the Purposes of the Attorney-Client Privilege*

Chubb argues that Mr. Coles is an employee of the corporation, who happens to be a patent agent, and as an employee, his communications with Chubb's U.S. counsel are privileged. Plaintiff cites *Foseco International Limited v. Fireline, Inc.*, 546 F.Supp. 22 (N.D.Ohio 1982), and *Duplan*, 397 F.Supp. at 1164, for this proposition. The court in *Foseco* found communications between the company, through its British patent agent, with its U.S. patent counsel were privileged, because they were in essence communications between the client and the client's attorney. *Id.* at 26. We do not agree, nor do we think that *Duplan* supports this proposition.

Generally, the "corporate client" consists of corporate employees who possess the information needed by the corporation's lawyers. *Upjohn Co. v. United States*, 449 U.S. 383, 394, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). If Mr. Coles is an "employee" he would clearly be within the realm of the "client". We find no cases which have considered whether a patent agent is an "employee" of the corporation; however, we find that patent agents are not employees of the corporation. Typically, a patent agent is akin to an independent contractor, as opposed to an employee. We have no facts (other than plaintiff's label of him) from which to conclude that Mr. Coles was otherwise than the typical patent agent.

Moreover, under *Foseco*, confidential communications of foreign patent agents, relating to the United States are potentially privileged, even where the agent is not registered with the U.S. Patent Office. This result would be unacceptable to either the *Duplan* or the *Ampicillin* courts. We decline to ignore their learned decisions.

### 2. *Privilege in the Context of Patent Activities*

The patent process typically requires frequent communications between a corporation and its patent attorneys. Nearly every document created in connection with patents is arguably privileged. In response, the courts have generated guidelines and general categories of documents which have been held to be either privileged or not privileged. We considered the following standards in our review of the documents.

1. Attorney-client privilege from discovery is not lost in a patent case merely because the communication contains technical data. *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 39 (D.Md.1974).

2. Documents containing considerable technical factual information, but which were nonetheless primarily concerned with giving legal guidance to the client are privileged. *Jack Winter, Inc. v.*

*Koratron Co., Inc.*, 54 F.R.D. 44, 46 (N.D. Cal.1971).

3. Work-product immunity is not extended to preparations for *ex parte* patent proceedings. *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152 (W.D.N.Y. 1982).

4. Communications dealing with the solicitation or giving of business advice are not privileged. *Jack Winter*, 54 F.R.D. at 47; *Burlington Industries*, 65 F.R.D. at 39.

5. Communications to and from a lawyer engaged in preparing or prosecuting a patent application are protected by the attorney-client privilege so long as the elements of the privilege are otherwise met. *Status Time Corp.*, 95 F.R.D. at 30–31.[5]

### 3. *Whether Intent is a Necessary Element of Waiver in the Discovery Context*

Plaintiff urges the Court to find that intent is required to waive privilege and that plaintiff's inadvertent production of privileged documents does not constitute a waiver. In support of this proposition, plaintiff relies primarily on *Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 951 (N.D. Ill.1982), and *TCC, supra.* We do not agree with plaintiff.

#### a. *Intent*

*Mendenhall*, stated that waiver requires an "intentional relinquishment or abandonment of a known right" and that "inadvertent production is the antithesis of that concept". *Id.* at 955.[6] However, the requirement of an intentional waiver of privilege, in the discovery context, has been expressly rejected on several occasions. *See, e.g., United States v. Willis*, 565 F.Supp. 1186, 1204 (S.D.Iowa 1983); *Champion International Corporation v. International Paper Co.*, 486 F.Supp. 1328 (N.D.Ga.1980); *Duplan*, 397 F.Supp. at 1162; *Underwater Storage Co., Inc. v. U.S. Rubber Co.*, 314 F.Supp. 546, 549

---

**5.** *Contra Zenith Radio Corp. v. Radio Corp. of America,* 121 F.Supp. 792, 794 (D.Del.1954).

**6.** *TCC v. IBM,* 573 F.2d at 650, expressly declined to decide whether waiver requires intent.

(D.D.C.1970); *see generally,* 8 J. Wigmore, Evidence § 2327 at 635 (McNaughton rev. 1961); J. McCormick, Evidence § 93 at 194 (1972 Cleary).

Those cases which require intent most often rely on *Connecticut Mutual Life Insurance Co. v. Shields,* 18 F.R.D. 448, 451 (S.D.N.Y.1955). *Connecticut Mutual* and the cases cited therein, have been distinguished on the ground that the decision to require specific intent was made pursuant to an interpretation of New York state law. *See, e.g., Weil v. Investment Indicators Research and Management, Inc.,* 647 F.2d 18, 24 (9th Cir.1981); *Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc.,* 75 F.R.D. 3 (S.D.Ohio 1977). We agree with this distinction, and accordingly, we are not persuaded by those cases which run counter to the weight of authority.

### b. *Inadvertence*

 Chubb relies on *TCC v. IBM,* for the proposition that inadvertent production of documents does not constitute a waiver of privilege. We believe that plaintiff misinterprets the decision. It is true that the court found an "inadvertent" disclosure. However, inadvertence was only one factor in the court's decision to find that the disclosure was not a waiver. Critical to the court's disposition were "the unique circumstances" under which IBM produced the documents. 573 F.2d at 648. During the pretrial proceedings, a judge overseeing discovery issued a pretrial order which "dramatically accelerated the document inspection program", requiring IBM "to produce within a three month period, ... approximately 17 million pages of documents". *Id.* On the basis of this accelerated discovery, the court concluded that IBM's inadvertent production was "de facto compelled disclosure" and not voluntary. *Id.* at 651–652.

This Court cannot, on the basis of the decision in *TCC v. IBM,* conclude that inadvertent disclosure may be grounds to protect the waiver that otherwise occurs upon voluntary production of documents. We observe, instead, that the weight of authority recognizes that waiver can occur through inadvertence. *In re Grant Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir. 1984); *Graco, Inc. v. Kremlin, Inc. and SKM,* 101 F.R.D. 503, 517 (N.D.Ill.1984); *Weil,* 647 F.2d at 24, *citing Underwater Storage,* 314 F.Supp. at 549.[7]

### 4. *Agreement in a Separate Litigation for Post-Inspection Right to Claim Privilege*

 Chubb maintained a post-inspection right to claim privilege for documents it disclosed to NCR Corporation, its adversary in a separate litigation involving the same patents at issue in this action. *See* Plaintiff's Supplemental Response at 14. Defendants argue that voluntary disclosure of documents to NCR Corporation waives the right to claim privilege to those same documents in the present action. We must agree with defendants.

Voluntary disclosure to an adversary waives both the attorney-client and work-product privileges. *See supra,* at 4. Our Circuit remains "vigilant to prevent litigants from converting the privilege into a tool for selective disclosure". *Permian,* 665 F.2d at 1221. Moreover, we have said on several occasions: "We believe that the attorney-client privilege should be available only at the traditional price: a litigant must maintain genuine confidentiality". *Subpoenas Duces Tecum,* No. 83–2116, slip op. at 7; *Permian,* 665 F.2d at 1222; *American Telephone and Telegraph Co.,* 642 F.2d at 1299.

 Clearly the disclosures to NCR Corporation constitute a waiver of privileges which might have otherwise attached. Confidentiality is the dispositive factor in deciding whether a communication is privileged. *Ampicillin,* 81 F.R.D. at 390. The agreement between Chubb and NCR does not alter the objective fact that the confidentiality has been breached voluntarily. The agreement is for the mutual conve-

---

7. *See also Central Soya Co., Inc. v. George A. Hormel & Co.,* 581 F.Supp. 51, 53 (W.D.Okl. 1982); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.,* 86 F.R.D. 160, 173 (E.D.Wis. 1980); *Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc.,* 75 F.R.D. 3 (S.D.Ohio 1977); *Smith v. FTC,* 403 F.Supp. 1000, 1018–1019 (D.Del.1975).

nience of the parties, saving the time and cost of pre-inspection screening. That agreement is merely a contract between two parties to refrain from raising the issue of waiver or from otherwise utilizing the information disclosed. Plaintiff has no genuine claim of confidentiality to the documents it produced to NCR Corporation.

In *Subpoenas Duces Tecum,* appellant had participated in the voluntary disclosure program with the SEC in the hope that it would receive lenient treatment or avoid a full scale investigation. In a subsequent litigation, appellant urged the court to adopt a "limited waiver theory", so that disclosures of privileged documents to SEC would not cause a waiver in the second litigation. The court found that the disclosure to the SEC was motivated by self-interest, the subsequent litigation was foreseeable, and refused to give privilege protection "for those same disclosures against different adversaries in suits centering on the very same matters disclosed to SEC". *Id.* at 11.

Undoubtedly, litigation with NBW and Docutel/Olivetti was foreseeable. Plaintiff now seeks protection of the very same documents disclosed to NCR. In effect, plaintiff is advancing another version of the "limited waiver" theory, based on an agreement in the prior action. We, too, decline to adopt a limited waiver theory.

## II. *Documents Withheld on Questions of Relevancy*

█ Defendants requested copies of all diaries of W.E. Randall since 1966, specifically limited to his employment by Chubb in any capacity which relates to automatic teller machines, entry apparatus, item dispensers, cash dispensers, and patents covering these items. Plaintiff refuses to produce Mr. Randall's diaries because (1) it is "clearly unreasonable to expect that plaintiff produce all the diaries of its Chief Executive Officer over an eighteen year period when, at best, only a miniscule portion are relevant", and (2) defendants have not filed a proper request for documents pursuant to the Federal Rules of Civil Procedure. Plaintiff's objection is marginally responsive to the request.

Procedurally, defendants' motion to compel production of the diaries is out of order. However, defendants' request is for materials clearly discoverable. For the sake of judicial economy, we will rule on the merits of the request, thereby avoiding future motions when defendants make a proper request.

Federal Rule of Civil Procedure 26(b)(1) defines the scope of relevancy. It provides, in pertinent part, "parties may obtain discovery regarding any matter ... relevant to the subject matter involved in the pending action, whether it relates to a claim or defense of the party seeking discovery or the claim or defense of any other party ...." It is well settled that a request is discoverable "if there is any possibility that the information sought may be relevant to the subject matter of the action". *In re Folding Carton Antitrust Litigation,* 83 F.R.D. 251, 254 (N.D.Ill. 1978), *citing* 8 C. Wright and A. Miller § 2008. The time period of the request is permissible where "the selected time frame is not wholly unreasonable or irrelevant". *Roesburg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296 (E.D.Pa.1980).

Defendant contends that the diaries contain information concerning alleged infringement by Docutel, Chubb's strategy in enforcing its patents against Docutel, and evidence relevant to issues of laches and estoppel and patent misuse.

Plaintiff, on the other hand, merely labels the bulk of the diaries as irrelevant. Chubb offered no explanation of why the documents are not relevant nor showed why the time frame is wholly unreasonable. Without more, plaintiff has not met its burden and this Court grants defendants' request to compel the Randall diaries.

No documents which are subject to production under this Opinion shall be released until the time for appeal (10 days) has expired, or until the disposition of any appeal taken.

An Order of even date is filed herewith.

## ORDER

This matter is before the Court on defendant's motion to compel production of

documents, plaintiff's opposition thereto, and oral argument thereon. For the reasons set forth in the Memorandum Opinion filed herewith, it is by the Court this 2nd day of October 1984

ORDERED that the motion to compel the production of certain documents is granted in part, and denied in part, as more specifically detailed in the attached Index; and it is

FURTHER ORDERED that, despite the infirmities of the request, the request for calendar production is granted.

### INDEX

*Documents on Which Plaintiff Claims Privilege* [1]

| Bates Number | |
| --- | --- |
| 002183–002184 | Not Privileged (Waived). |
| 002774–002775 | Not Privileged under attorney-client and/or work-product privilege. |
| 002776 | Not Privileged under attorney-client and/or work-product privilege. |
| 002879–002882 | Not Privileged (Waived). |
| 003563–003568 | Not Privileged (Waived). |
| 003569–003571 | Not Privileged (Waived). |
| 003574–003592 | . Not Privileged (Waived). |
| 003593–003595 | Not Privileged (Waived). |
| 004084–004085 | Privileged under attorney-client privilege. |
| 005893–005912 | Privileged under attorney-client privilege. |
| 005969–005982 | Not Privileged (Waived). |
| 005994, 005998 006001–006016 | Not Privileged (Waived). |
| 006042–006045 | Not Privileged (Waived). |
| 006922 | Not Privileged under attorney-client and/or work-product privilege. |
| 008160 | Not Privileged under attorney-client and/or work-product privilege. |
| 013341–013342 | Not Privileged (Waived). |
| 013343 | Not Privileged (Waived). |
| 014298 | Work-product. |
| 014299 | Not Privileged (Waived). |
| 014300–014301 | Not Privileged under attorney-client privilege. |

Although this list has changed several times heretofore, this Index represents those documents on which plaintiff still maintains a claim of privilege at the time it produced documents for *in camera* inspection. We call the parties' attention to the fact that we have eliminated the document identified as Bates Nos. 002204–002212 because that document is a composite of Nos. 03563–03568 and 03569–03571.

---

[1]. Letter dated 1976, plaintiff's answers to interrogatories states that plaintiff did not anticipate litigation until 1978.