UNITED STATES of America, Plaintiff,

v.

EXXON CORPORATION, Defendant.

Civ. A. No. 78–1035.

United States District Court,
District of Columbia.

Nov. 30, 1981.

See also, D.C., 87 F.R.D. 624.

John N. Hanson, Maryann Clifford, Dept. of Justice, Dean S. Cooper, Dept. of Energy, Paul Wallach, Larry P. Ellsworth, Richard Levie, Civ. Div., Dept. of Justice, Washington, D. C., for plaintiff.

David J. Beck, Ronald D. Secrest, Fulbright & Jaworski, Houston, Tex., David R. Johnson, John M. Simpson and Maury S. Epner, Fulbright & Jaworski, Washington, D. C., and Barbara Finney, Exxon Corp., Houston, Tex., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

In its third supplemental response to plaintiff's first set of interrogatories and request for production of documents, Exxon has asserted the attorney-client privilege with respect to 395 documents sought by the government in interrogatories 9–19 and document requests 1 and 2. In this motion to compel, plaintiff claims that these documents are not privileged because Exxon waived the attorney-client privilege by interposing the affirmative defense of good faith reliance on the government's regulations and communications. In the alternative, the government argues, Exxon has failed to set out facts demonstrating that the privilege applies to specific documents; i.e., whether particular documents were prepared to secure legal advice and with the expectation of confidentiality.

Exxon contends that it did not waive the privilege by raising its affirmative defenses because these defenses only raised questions of its relationship with DOE and not its internal positions on and interpretations of the meaning of DOE's regulations. Further, Exxon defines any waiver that may have occurred quite narrowly, suggesting that only particular attorney-client matter thrust into the controversy by Exxon are discoverable and not all documents relating to the entire subject matter raised by Exxon's defenses. Exxon also argues that the Finney and Gillette affidavits, submitted with Exxon's third supplemental response, sufficiently pinpoint the basis for Exxon's claims of attorney-client privilege.

In an August 6, 1980 memorandum opinion and order, 87 F.R.D. 624 (1980), the court considered a DOE motion to compel concerning three of the same interrogatories at issue here, interrogatories 17–19. The court did not make specific rulings on the discoverability of individual documents but presented some general observations regarding the acute relevance of Exxon's corporate state of mind to this litigation. The court determined that documents in Exxon's corporate files are "highly relevant" to the merits of its defense of good faith compliance with governmental regulations. 87 F.R.D. at 641. Concomitantly, the court expressly rejected Exxon's contention that its good faith defense only involved communications between Exxon and the government, finding that Exxon's "internal statements should also reveal whether Exxon honestly believed that it acted in good faith." 87 F.R.D. at 624. Finally, the court mandated that Exxon specify any withheld documents in a *Vaughn*-like index, delineating (1) the source of the information; (2) whether the source was, in fact, an attorney, and (3) whether an attorney uttered the information in confidence. *Id.*

The court's August 6, 1980 memorandum, therefore, determined, in contravention of Exxon's present contention, that internal documents concerning interpretations of pertinent regulations are highly relevant to this dispute. The court also strongly implied that Exxon had "waived" its evidentiary privileges with respect to such documents:

> "Exxon's claim of good faith puts directly in issue the actions of counsel in deciding whether and when to unitize. If counsel reflected on the propriety of unitization, then these documents are probative to the merits of the good faith defense. Accordingly, the court *orders their production.*"

87 F.R.D. at 642 (Emphasis supplied). This language suggests that if a particular document is probative on the issue of Exxon's affirmative defenses that document is *ipso*

*facto* discoverable; i.e., Exxon has waived any privileges it has with regard to documents relevant to its subjective intent in deciding how to comply with FEA regulations.

The court's August 6, 1980, memorandum opinion established as the law of this case that any documents pertinent to Exxon's defense of good faith are discoverable. Such a conclusion finds substantial support in the case law. Most courts considering the matter have concluded that a party waives the protection of the attorney-client privilege when he voluntarily injects into the suit the question of his state of mind. For example, in *Anderson v. Nixon*, 444 F.Supp. 1195, 1200 (D.D.C.1978), Judge Gesell stated that as a general principle "a client waives his attorney-client privilege when he brings suit or raises an affirmative defense that makes his intent and knowledge of the law relevant."

In *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975), perhaps the most exhaustive treatment of this subject, the court held that by invoking a defense of qualified immunity in a section 1983 case the defendant impliedly waived any privilege it had with regard to information "germane" to the defense. The court reasoned that the plaintiff needed access to privileged information to "defend against defendant's affirmative defense." This need, "inextricably merged with the elements of plaintiff's case and defendant's affirmative defense," outweighed any "resulting injury to the attorney-client relationship." 68 F.R.D. at 582.

In *Russell v. Curtin Matheson Scientific, Inc.*, 493 F.Supp. 456 (S.D.Tex.1980), plaintiffs contended their ADEA suit was not time-barred because the time for filing should have been equitably tolled. The court, adopting the reasoning in *Hearn v. Rhay*, held that the attorney-client privilege could not prevent discovery into communications they had with their attorney concerning the proper procedures to be followed. The plaintiffs had "by an affirmative act for their own benefit, the raising of the equitable tolling issue, placed informa-

tion protected by the privilege in issue ... To protect against disclosure of such information would be manifestly unfair to the defendant." 493 F.Supp. at 458.

*Connell v. Bernstein-Macauley, Inc.*, 407 F.Supp. 420 (S.D.N.Y.1976) presented a factual paradigm quite similar to that of the instant case. Plaintiff sought recovery for damages allegedly sustained under various securities laws. Plaintiff claimed that defendant was estopped from raising a statute of limitations bar because defendant had prevailed upon plaintiff to withhold suit. The court, again persuaded by the reasoning in *Hearn v. Rhay*, authorized discovery into attorney-client communications in order to determine whether the plaintiff withheld suit solely or principally because of defendant's actions. The court concluded that since there was a "good faith basis" for believing that investigation of otherwise privileged information would "shed light" on the validity of the claim of estoppel, the plaintiff must be "deemed to have waived the privilege." 407 F.Supp. at 423.

In both *Connell* and the instant case the purpose of discovery was to ascertain whether one party acted in reliance on the representations of the other party. Further, in both cases, the issue of good faith reliance was affirmatively pleaded by the party seeking to use the attorney-client privilege as a shield against discovery. *Connell* clearly rejected any suggestion that the question of reliance only implicates the actions and representations of the party seeking discovery; the court recognized that the determination of good faith reliance necessarily turns upon the subjective intention of the party claiming reliance and, therefore, demands investigation into attorney-client communications where such an intention would be manifested. 407 F.Supp. at 422. *See also Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D.Fla.1980) (by injecting the issue of the parties' intent in entering into certain contracts into the case, plaintiff waived attorney-client privilege; the benefit of piercing the privilege far outweighed any injury to attorney-client relationship where issue of parties'

mental state directly raised by plaintiff); *Haymes v. Smith*, 73 F.R.D. 572, 577 (W.D. N.Y.1976) (attorney-client privilege is waived by intentional injectment of affirmative defense that defendant reasonably believed that no constitutionally protected right of plaintiff was being infringed by plaintiff); *Garfinkle v. Arrata National Corp.*, 64 F.R.D. 688, 689 (S.D.N.Y.1974); *cf. Black Panther Party v. Smith*, 661 F.2d 1243, 1267–1268 (D.C.Cir.1981) (upholding a balancing test to determine whether plaintiff's First Amendment interest could prevent discovery into pertinent information).

■ Thus, the law of the case established in this court's August 6, 1980 opinion and the relevant caselaw on the subject indicates that Exxon has waived its attorney-client privilege by raising the defense of good faith reliance on DOE's representations. These defenses do not solely relate to the "objective" representations of DOE but directly concern Exxon's subjective interpretation and understanding of those representations; i.e., Exxon's corporate state of mind. As in the *Connell* case, Exxon's affirmative defenses necessarily revolve around whether Exxon did, in fact, primarily or solely rely upon a particular DOE regulation or communication when the company made its pricing decisions. Thus, the only way to assess the validity of Exxon's affirmative defenses, voluntarily injected into this dispute, is to investigate attorney-client communications where Exxon's interpretation of various DOE policies and directives was established and where Exxon expressed its intentions regarding compliance with those policies and directives. There is no other reasonable way for plaintiff to explore Exxon's corporate state of mind, a consideration now central to this suit.

Moreover, in support of its motion to dismiss for lack of indispensable parties, Exxon argued that it did not cause the overcharges on oil sold by other interest owners. The court's ultimate determination of Exxon's liability for such overcharges will turn on whether Exxon did influence the pricing decisions of other owners.

Whether Exxon had an overall scheme to pressure other interest owners to adopt certain pricing policies can only be effectively determined by exploring attorney-client discussions wherein such a scheme may have been concocted. Thus, not only with respect to the good faith reliance defense, affirmatively pleaded in Exxon's answer, but also the question of causation, purposefully injected into this suit by Exxon, piercing the attorney-client privilege is essential to achieving a just resolution of the case.

■ Exxon argues that even if waiver applies, it must be limited to specific communications relied on by Exxon in supporting its defense. The cases employed by Exxon to support this contention, e.g., *Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156 (D.Del.1977) are inapposite to the present controversy. Those cases involved instances where one party introduced part of a confidential communication as evidence bearing upon an issue already in the case. In such circumstances, a court can legitimately find that waiver only extends to the remainder of the particular communication at issue. *See United States v. Goo*, 10 F.R.D. 332 (D.Hawaii 1950), *aff'd*, 187 F.2d 62 (9th Cir. 1951). Here, because the waiver is generated by the injection of an entire defense, the magnitude of the waiver must be proportionately larger. As the cases cited earlier suggest, the waiver must pertain to all documents bearing upon the subject matter of the defense. Otherwise, the party interposing the defense is free to divulge only those documents that are most favorable to his defense; this is precisely the inequitable result that the waiver doctrine seeks to avoid.

The interrogatories at issue here were clearly directed at uncovering information relating to Exxon's interpretation of and reliance upon various DOE directives, regulations and communications. A review of the descriptions of the 395 documents withheld by Exxon indicates that the documents contain discussions bearing directly upon Exxon's good faith reliance and causation defenses. Exxon has made no effort to pinpoint specific communications that are

not relevant to these defenses, and has had more than sufficient opportunity to do so. Therefore, the government's motion to compel discovery is granted.