**RECYCLING SOLUTIONS, INC., et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**No. Civ.A. 96–170(TPJ).**

United States District Court, District of Columbia.

Aug. 22, 1997.

Robert Lewis Duston, Gary L. Lieber, Anessa Abrams, Schmeltzer, Aptaker & Sheppard, Washington, DC, for Plaintiffs.

Jack M. Simmons, III, Office of Corporation Counsel, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiffs Recycling Solutions, Inc. ("RSI"), a closely-held Maryland corporation, and its two principal officers and stockholders, sue the District of Columbia ("D.C." or "City"), and various of its officials, for racial and/or ethnic discrimination in the award of a public contract.

RSI is in the business of processing and marketing recyclable waste products such as metal, glass, plastic, and newsprint. In February, 1991, the D.C. Department of Public Works ("DPW") issued a request for proposals to recycle such materials collected by its sanitation workers. RSI bid on the contract, but lost the award under circumstances giving rise to suspicions on its part that racial and ethnic favoritism or antipathy were the decisive (albeit unspoken) factors in its non-selection. RSI appealed to the D.C. Contract Appeals Board ("CAB") which, in April,

1994, upheld the appeal and directed DPW to award the contract to RSI.

In those portions of the Amended Complaint pertinent to the issue presently before the Court, plaintiffs allege that DPW declined to accede to the CAB decision, and that DPW and the individual defendants then conspired with one another to obstruct and delay the award of the contract to RSI by prosecuting frivolous and ill-founded litigation in the guise of purporting to "appeal" the decision of the CAB. In the meantime, they allege, DPW allowed the winning bidder by default, whose racial and ethnic credentials were more to its liking, to continue to perform the contract as a sole source provider, to its substantial profit and the District of Columbia's (and plaintiffs') loss, all for the purpose of furthering an official policy of racial and ethnic preferences. Plaintiffs charge, *inter alia*, violations of their civil rights under 42 U.S.C. §§ 1981 and 1983, and ask for both monetary and equitable relief.

### I.

The case is presently before the Court on plaintiffs' motion to compel discovery; specifically, the production of documents related to the decision to pursue the allegedly frivolous "appeal;" the deposition testimony of the former director of DPW regarding the circumstances surrounding the initiation and prosecution of that litigation; and the deposition of an authorized spokesperson for the District of Columbia itself, designated pursuant to Fed.R.Civ.P. 30(b)(6), to address essentially the same subject. Defendants, represented by the same Corporation Counsel's Office whose attorneys allegedly counseled and represented them in the litigation in question,[1] object to the discovery on the ground that the subject matter of the discovery requests is protected by the attorney-client privilege.[2]

■ Plaintiffs contend that defendants have waived the attorney-client privilege, if,

indeed, it ever attached, with respect to the DPW's attempted appeal of the CAB decision. The Court agrees.

In their Answer to the Amended Complaint, defendants assert that the former Director of DPW consulted the Corporation Counsel with respect to it, and acted upon his advice in authorizing its filing. (Answer to Amended Complaint, para. 57). Defendants' Third Affirmative Defense asserts that their individual and collective acts or omissions were undertaken within the scope of their employment, and were "reasonable, lawful and/or necessary in the circumstances." The Sixth Affirmative Defense asserts that they "acted in good faith and with the reasonable belief that [they acted] lawful[ly] under the circumstances." Their Fourteenth Affirmative Defense is one of "absolute and/or qualified immunity." The defendants thus have, by their Answer, placed both their knowledge of the law and their *bona fides* in issue, and cannot therefore invoke the attorney-client privilege to conceal what they revealed to the only lawyers they are known to have consulted at the time and what they were told in response.

■ As the adage states, privilege cannot be used both as a sword and as a shield. *See Computer Network Corp. v. Spohler,* 95 F.R.D. 500, 502 (D.D.C.1982); *United States v. Exxon Corp.,* 94 F.R.D. 246, 247 (D.D.C. 1981) (party waives protection of attorney-client privilege when he voluntarily injects into suit the question of his state of mind); *Anderson v. Nixon,* 444 F.Supp. 1195, 1200 (D.D.C.1978) (client waives attorney-client privilege when he brings suit or raises affirmative defense that makes his intent and knowledge of the law relevant); *Hearn v. Rhay,* 68 F.R.D. 574, 581–82 (E.D.Wash. 1975) (defense of qualified immunity in section 1983 case waives privilege for information "germane" to defense); *see also Glenmede Trust Co. v. Thompson,* 56 F.3d 476,

---

**1.** So far as appears, current counsel for defendants, Assistant Corporation Counsel Jack M. Simmons III, Esq., was not involved.

**2.** Because defendants and Corporation Counsel are officials of the same government, and the former consulted the latter with respect to proposed official action to be taken, defendants also

invoke the deliberative process privilege for their communications. For purposes of this case, however, the issues raised and analysis made of them are identical under both privileges. *See Dominion Cogen, D.C., Inc. v. District of Columbia,* 878 F.Supp. 258 (D.D.C.1995).

486 (3d Cir.1995) (party asserting privilege not entitled to define parameters of waiver by selectively identifying the subject matter of advice actually relied on).[3]

■ Plaintiffs also contend that defendants are precluded from insulating their communications with Corporation Counsel from disclosure by the crime-fraud exception to the attorney-client privilege. Communications between an attorney and client in furtherance of the commission of a crime or fraud, of course, are *ab initio* not protected by the attorney-client privilege. *See Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469–70, 77 L.Ed. 993 (1933); *In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985).

■ At present, plaintiffs are charging defendants with conduct that is, at worst, a civil wrong or tort, not a crime or fraud, and it has not yet been generally accepted across the country that legal consultations in connection with the commission of a tort are denied the sanctuary of the attorney-client privilege. For the purposes of this Court and this case, however, any doubt has been resolved by the D.C. Circuit. *See In re Sealed Case*, 676 F.2d 793, 812 (D.C.Cir.1982) (attorney-client privilege not available to protect communications made in furtherance of a crime, fraud, *"or other type of misconduct fundamentally inconsistent with the basic premises of the adversary system"*) (emphasis supplied). Whether or not it rises to the level of a crime (or conceivably a fraud upon some other court), this Court is satisfied that employment of the services of counsel by public officials to assist in litigation designed to facilitate unconstitutional racial or ethnic discrimination is such misconduct. *Cf. NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

## II.

It remains to be seen whether any of the information developed by the discovery hereby ordered will be relevant to the subject matter involved in the pending action. The Court reserves ruling on its admissibility as evidence at trial.

As a general proposition, however, it would appear preliminarily that as of the spring of 1994, when defendants first consulted the Corporation Counsel on the advisability of, and prospects for resistance to, the decision of the CAB, the circumstances in which they presented the case to him will be central not only to their defense in this case, but also to plaintiffs' claims of racial and ethnic discrimination. If the race or ethnicity of the bidders played no part in the defendants' deliberations on the contract award or the decision to appeal, with the merits of the competing proposals in terms of cost and performance alone being the issues, such evidence would tend to prove that defendants acted well within the lawful scope of their duties in prosecuting the appeal, the pleading and jurisdictional errors later made by the Corporation Counsel as their lawyer notwithstanding.

If, on the other hand, defendants acted even in part to perpetuate a policy favoring or disfavoring bidders on criteria related to their race or ethnicity, then their actions must be subjected to much closer scrutiny. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 273–74, 106 S.Ct. 1842, 1846–47, 90 L.Ed.2d 260 (1986).

If the Corporation Counsel was informed that defendants were engaged in promoting affirmative action or increasing minority representation in public sector contracting, and that they found the decision of the CAB to be an impediment to that objective, the Corporation Counsel's legal advice appropriate in the circumstances would have been sharply circumscribed by both established law · and historical experience. So informed, the Corporation Counsel would be expected to have advised defendants that any official racial classification must be justified by a compelling governmental interest and narrowly tailored to achieve that goal. *Wygant*, 476 U.S. at 274, 106 S.Ct. at 1847. It would be consti-

---

**3.** Defendants contend that their Answer does not, in so many words, expressly raise a "reliance-upon-counsel defense," and that they left legal. judgments generally to the Corporation Counsel rather than acting upon his advice. If, however, they did not expect to submit the Corporation Counsel's advice as relevant to their own defense of this action, reference to their consultation with him would be superfluous.

tutionally permissible, he would have told them, to employ racial or ethnic criteria to distinguish between and evaluate competing bidders for a public contract only if the reasons for such classification were "clearly identified and unquestionably legitimate," and then only to the extent necessary to remedy past discrimination in public contracting in the District of Columbia. *See City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 505, 109 S.Ct. 706, 727–28, 102 L.Ed.2d 854 (1989) (internal citation omitted).

Corporation Counsel might also be expected to have reminded defendants that some years earlier the City, represented then as now by Corporation Counsel, had been unable to justify a policy of racially preferential *hiring* by the D.C. Fire Department, because he had been unable to produce "clearly identified and unquestionably legitimate" evidence of the past discrimination in the Fire Department that the policy was ostensibly formulated to redress. *See Hammon v. Barry,* 826 F.2d 73, 76 (D.C.Cir.1987).

Turning to the advisability of litigation as antidote to the CAB decision, Corporation Counsel would also have instructed defendants that, in acting as officers of the District of Columbia government in prosecuting what might be proven to be a spurious lawsuit to promote or conceal a racially discriminatory policy of awarding public contracts, neither they nor the City would be immune from liability under Title 42 U.S.C. § 1983. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Finally, if presented with reason to believe that, notwithstanding such advice, the defendant officials nevertheless intended to persist in pursuing groundless litigation as a subterfuge for racial discrimination, the Corporation Counsel might have informed them that the conduct could even be regarded as criminal; *see* 18 U.S.C. §§ 241, 242, and that they could expect no help from him. *See D.C. Rules of Professional Conduct,* Rule 3.3(a)(2).[4]

## III.

The heart of plaintiffs' claims on these issues is that the former Director of DPW, in her official capacity, participated in an unlawful conspiracy with her co-defendants to discriminate against plaintiffs because of their race or ethnicity, and to that end, involved them in protracted and duplicitous litigation to disguise the true nature of the conspiracy. If she consulted with an attorney to facilitate the commission of the overt acts necessary in furtherance of such a conspiracy, the evidence of it may not be suppressed or concealed behind a privilege of any description known to this Court to apply upon the facts of this case.

The discovery hereby ordered, however, is expressly limited to an inquiry as to whether racial or ethnic factors were ever bespoken between defendants, the Corporation Counsel, or any others in active concert or participation with them in the course of pursuing litigation to resist the ruling of the CAB. It is not to encompass the merits of the CAB decision, or legal issues arising thereon, or legal strategies to be employed directed to the prompt and lawful resolution thereof. And it is not to address issues previously considered or presently pending before either the Superior Court of the District of Columbia or the District of Columbia Court of Appeals.

For the foregoing reasons it is, this 21st day of August, 1997,

ORDERED, that plaintiffs' motion to compel discovery is granted in part, as qualified by the limiting paragraph above; and it is

FURTHER ORDERED, that defendants produce all documents at issue herein as requested by plaintiffs' Requests Nos. 39, 40, 41, 42, 43, and 44, for which privilege has been claimed respecting the initiation and prosecution of the case of *Francis v. Recycling Solutions, Inc.,* CV94–5461 in the Superior Court for the District of Columbia, for

---

4. Plaintiffs have not to date suggested complicity on the part of the Corporation Counsel's office in the conspiracy they allege. Nevertheless, the Court is not oblivious to the potential for conflict of interest between defendants and counsel

herein: discovery might reveal that defendants misinformed the Corporation Counsel of their intentions in connection with the *Francis v. RSI* litigation or that the Corporation Counsel gave erroneous advice with respect thereto.

inspection and copying by counsel for plaintiffs, on or before September 15, 1997; and it is

FURTHER ORDERED, that defendant Esther Hager Francis appear at a deposition noticed for the purpose, and that she answer all questions propounded to her respecting the initiation and prosecution of the case of *Francis v. Recycling Solutions, Inc.*, referred to above, without regard to whether the answers are protected by the attorney-client privilege, on or before September 15, 1997; and it is

FURTHER ORDERED, that the defendant District of Columbia designate a witness pursuant to Fed.R.Civ.P. 30(b)(6) to appear and testify at deposition noticed for the purpose, and that said witness answer all questions proposed respecting the initiation and prosecution of the case of *Francis v. Recycling Solutions, Inc.*, referred to above; and it is

FuRTHER ORDERED, that the deadline for completion of the discovery aforesaid is hereby extended to September 20, 1997; and it is

FURTHER ORDERED, that defendants may, at their election, request that all such discovery be placed under seal pending further order of Court.[5]

See also 948 F.Supp. 1107.

---

**5.** It is also not the intention of the Court that the matters at issue herein for which privilege has been claimed be placed in the public record at this time. The discovery proceedings, i.e., the documents produced and testimony taken, shall be treated as sealed, *pro tempore,* and the Court will entertain an application for an appropriate protective order should defendants request it.