**THE NAVAJO NATION, Plaintiff,**

v.

**PEABODY HOLDING CO., INC., et al., Defendants.**

**Civil Action No. 99–469(EGS).**

United States District Court, District of Columbia.

Jan. 9, 2009.

Britt E. Clapham, II, John Rutherford, Levon Henry, Louis Denetsosie, Navajo Nation Department of Justice, Window Rock, AZ, Paul E. Frye, Frye Law Firm, PC, Albuquerque, NM, Ryan Morland Malone, Samuel John Buffone, Ropes & Gray, LLP, Washington, DC, for Plaintiff.

Joseph D. Edmondson, Jr., Marc Bernard Dorfman, Foley & Lardner, LLP, James Francis Hibey, Howrey, LLP, Richard Harper Saltsman, Federal Aviation Administration, Office of the Chief Counsel, William R. Sherman, Latham & Watkins, LLP, Antonia B. Ianniello, Jane Irene Ryan, Paul R. Hurst, Reid Henry Weingarten, Steptoe & Johnson LLP, Washington, DC, Terrance Gilroy Reed, Vernon Thomas Lankford, William Francis Coffield, IV, Lankford, Coffield & Reed, PLLC, Alexandria, VA, for Defendants.

## *ORDER*

EMMET G. SULLIVAN, District Judge.

On March 6, 2008, the Court referred this case to Magistrate Judge Alan Kay for a Report and Recommendation. On March 20, 2008, Plaintiff filed a Motion for Protective

Order, and Defendants filed a Motion to Compel Production of Documents. The motions were fully briefed, and Magistrate Judge Kay issued a Report and Recommendation on June 13, 2008. The Court has considered Plaintiffs' objections to the Report and Recommendation, the responses and replies thereto, the applicable law, and the entire record. Pursuant to Local Civil Rule 72.3(c), the Court accepts the findings and adopts the Recommendation of Magistrate Judge Kay contained in the June 13 Report. Accordingly, it is by the Court hereby

**ORDERED** that Plaintiff's Motion for Protective Order and Order Requiring the Returns of Navajo Nation's Privileged Materials is **DENIED;** and it is

**FURTHER ORDERED** that Defendants' Motion to Compel Production of Documents Withheld by the Navajo Nation with respect to (1) all documents that the Navajo Nation disclosed to the Hopi during the Possessory Interest Tax ("PIT") litigation and (2) the 578 documents relating to the same subject matter as the documents that the Navajo Nation disclosed to the Hopi during the PIT litigation or to Defendants during the instant litigation is **GRANTED;** and it is

**FURTHER ORDERED** that Defendants' Renewed Motion to Compel with respect to privileged documents that bear on the Navajo Nation's claims of fraudulent concealment and justifiable reliance is **DENIED;** and it is

**FURTHER ORDERED** that Plaintiffs and Defendant shall file a joint recommendation by **February 9, 2009** for future proceedings; in the event that the parties are unable to agree on a joint proposal, the parties shall file separate proposals on the issues on which they cannot reach an agreement.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION* [1]

ALAN KAY, United States Magistrate Judge.

Pending before the Court are Plaintiff Navajo Nation's Motion for Protective Order and Order Requiring the Return of the Navajo Nation's Privileged Materials and Incorporated Memorandum in Support [343], Defendants' Opposition [348], and Plaintiff's Reply (filed under seal). Also pending are Defendants' Renewed Motion to Compel Production of Documents Withheld by the Navajo Nation (filed under seal), Plaintiff's Opposition (filed under seal), and Defendants' Reply [351]. After considering the submissions of the parties and the argument presented at the hearing on May 15, 2008, the undersigned issues the following Report and Recommendation.

### I. *Background*

#### A. *The PIT Litigation*

The current motions stem from lease negotiations conducted during the 1980s between the Navajo Nation ("the Navajo"), the Hopi Tribe ("the Hopi"), and Peabody Coal Company ("Peabody") concerning the mining of coal deposits jointly owned by the Navajo and Hopi. Pursuant to a 1968 lease, Peabody operated two mines primarily on Navajo territory. *Peabody Coal Co. v. Navajo Nation,* 860 F.Supp. 683, 687 (D.Ariz.1994). Beginning in 1978, the Navajo levied a Possessory Interest Tax ("PIT") and Business Activity Tax upon Peabody's mining operations. *Id.* at 687–88. Following amendments to the coal leases in 1987, Peabody and its business associate Southern California Edison ("SCE") challenged the Navajo's authority to impose these taxes without the Hopi's consent in the United States District Court for the District of Arizona. *Id.* at 688–89.

The Hopi intervened in the suit, seeking half of any revenue collected by the Navajo through the taxes or, in the alternative, a forbearance preventing the levying of the taxes. *Id.* at 689. The Navajo raised the affirmative defenses of waiver, estoppel, and laches. *Id.* at 690. Specifically, the Navajo contended that the Hopi relinquished their claim to any tax revenue when they failed to negotiate a tax-sharing arrangement under

---

1. United States District Judge Emmet G. Sullivan referred this matter to the undersigned for a Report and Recommendation on the parties' privilege-related motions, pursuant to Local Civil Rule 72.3(a). (Minute Order dated 3/6/08.)

the 1987 amendments to the leases. (Def.'s Opp'n at 3.) In an effort to rebut these affirmative defenses, the Hopi sought the disclosure of any document indicating that the Navajo knew or should have known about the Hopi's potential claim to the tax revenue or the Navajo's possible liability if the Navajo elected to abate or waive certain taxes owed by Peabody. (Hurst Decl., Ex. A–3 [348–5] at 1–2.) The Navajo objected to the document request, stating that it called for disclosure of privileged attorney-client material. (Dahlstrom Decl., Tab A [343–3] at 24.) The Hopi moved to compel, arguing that the information was discoverable under the doctrine of issue-injection waiver, maintaining that the Navajo voluntarily waived the privilege when they raised their affirmative defenses. (Hurst. Decl., Ex. A–1 [348–3] at 7.) United States District Judge Strand agreed with the Hopi and ordered "all information that fairly bears on the affirmative defenses is to be disclosed." (Order of Feb. 24, 1994, Hurst Decl., Ex. A–3 at 2.)

The Navajo did not appeal the court's decision or withdraw the affirmative defenses. Instead, the tribes negotiated a stipulation regarding the production and use of the documents ("Stipulation") in early March 1994. (Dahlstrom Decl., Tab C [343–3].) The Stipulation stated, in part: "The Navajo Nation does not want its compliance with [the court order] to cause a general or limited waiver of the Nation's attorney-client privilege—except as to the documents subject to the Order and to the extent necessary to proceed with litigation." (*Id.* at 2.) Before trial, United States District Judge Van Sickle, who had replaced Judge Strand, entered an order regarding discovery ("Order"). (Order of Mar. 17, 1994, Hurst Decl., Ex. A–5 [348–7].) Under the Order, Hopi counsel gained access to the Navajo documents ("PIT documents") and agreed to the retention of these documents by the court under seal. (*Id.*) The order permitted the Hopi to select any of the allegedly privileged documents for use in the PIT litigation. (*Id.*) The Order further pro-

vided that the selected PIT documents would be marked:

> NAVAJO PRIVILEGED DOCUMENT
> SUBJECT TO COURT ORDER
> DO NOT COPY

(*Id.*) The Order placed restrictions on the copying or disclosure of any PIT document to a third party without first obtaining the written consent of the court or the Navajo. (*Id.*) Finally, the Order required the return of all PIT documents to the Navajo at the completion of litigation. (*Id.*) However, the Order did not include the non-waiver language on behalf on the Navajo contained in the Stipulation. (*Id.*)

Following the dismissal of Peabody and SCE from the action, the PIT litigation between the Navajo and Hopi proceeded to trial. (*See* J. of Feb. 24, 1994, Dahlstrom Decl., Tab H [348–7].) Both tribes introduced PIT documents as exhibits and a number of documents were read aloud in open court, without objection from the Navajo. (Hurst. Decl., Exs. A–7 to A–12 [348–9 to 348–14].) The tribes also included PIT documents in their post-trial briefs and in the appellate record before the United States Court of Appeals for the Ninth Circuit. (*Id.* Exs. A–11 to A–13.)

### B. *The Disclosure of the PIT Documents*

In 1993, the Navajo sued the United States regarding the government's regulation of the royalty that the Navajo could charge on their coal leases in the Court of Federal Claims.[2] *Navajo Nation v. Peabody Holding Co.*, 209 F.Supp.2d 269, 272 (D.D.C.2002). The Navajo alleged that the government breached their statutory and fiduciary duty to the tribe by first delaying their decision on the royalty rate and then approving an inadequate rate. *Id.* Six years after the initial filing in the Court of Federal Claims, the Navajo filed a Complaint in the instant litigation alleging that Defendants[3] improperly influenced the

---

2. For a more detailed account of the litigation before the Court of Federal Claims, see *United States v. Navajo Nation*, 537 U.S. 488, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003).

3. Defendants in the present case are Peabody Holding Company, Peabody Coal Company, Peabody Western Coal Company, Salt River Project Agricultural Improvement and Power District, and SCE. Only Peabody Coal Company and SCE

government's actions regarding the coal leases in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and interfered with a fiduciary relationship. *Id.* In response, Defendants asserted a statute of limitations defense, seeking to bar the Navajo's claim because of the tribe's fourteen-year delay in bringing the action. (Def.'s Mem. Supp. Mot. Compel ("Def.'s Mem.") at 4.) The Navajo responded that the statute of limitations was tolled because of Defendants' fraudulent concealment and the Navajo's detrimental reliance on Defendants' actions. (*Id.*) To rebut this claim, Defendants requested documents relating to the Navajo's knowledge, reliance, and diligence concerning the royalty rate negotiations. (*Id.*)

In particular, Defendants sought all documents related to the PIT litigation, including exhibits from the Arizona court proceedings. (Coffield Decl. [348–23] ¶ 2.) In May 2002, the Hopi produced thousands of documents to Peabody and the Navajo, including some of the documents that the Navajo claimed as privileged in the PIT litigation. (Hurst Decl. [348–2] ¶ 13; Scarboro Decl. [343–5] ¶ 10.) The Hopi also produced a compact disc to all parties detailing the PIT documents served on Peabody and the Navajo. (Hurst Decl. ¶ 14.) None of the documents produced by the Hopi carried an indication that they were privileged or filed under seal, as required by the March 16, 1994 Order. (*See* Coffield Decl. ¶ 9; Hurst Decl. ¶ 20.) The Navajo never consented to the disclosure of this allegedly privileged information and, in November 2003, the tribe produced a revised privilege log, which still included many of the documents disclosed to Defendants by the Hopi. (Def.'s Opp'n at 7.) On January 16, 2004, SCE contacted the Navajo asking the tribe to explain their continued privilege claim. (Hurst. Decl., Ex. A–14 [348–7].) The Navajo stated they were unaware of the disclosure of the materials until the SCE's letter and that they had not waived their privilege claim to the information. (*See* Buffone Decl. [343–7] ¶¶ 2–5.) After conducting an internal investigation, the Navajo filed a Motion for Protective Order seeking the re-

turn of the document. (Pl.'s Mem. Supp. Mot. ("Pl.'s Mem.") at 6.) Defendants refused to return the documents, asserting that the Navajo waived any claim of privilege following the disclosure of the PIT documents to the Hopi in 1994 and the tribes' use of this information in open court. (Hurst Decl., Ex. A–14.)

## II. *Discussion*

### A. *Navajo Nation's Motion for Protective Order and Order Requiring the Return of the Navajo Nation's Privileged Materials*

The Navajo seek the return of twenty-four allegedly attorney-client and work product privileged documents that the Hopi disclosed to Defendants without the Navajo's permission or, alternatively, a protective order limiting Defendants' use and disclosure of these documents. The parties do not dispute that the documents originally qualified as privileged. Instead, the parties disagree about whether the Navajo subsequently waived these privileges. The Navajo's central contention is that, because the disclosures of the documents resulted from judicial compulsion and third-party inadvertence, the Navajo never affirmatively waived privilege. (Pl.'s Mem. at 1.) Defendants respond that the Navajo waived any claim of privilege either under the doctrine of issue-injection waiver or by failing to take reasonable steps to ensure the confidentiality of the documents. (Def.'s Opp'n at 11, 16.)

#### 1. *Defendants should not be required to return the twenty-four documents to the Navajo Nation.*

Generally, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED.R.CIV.P. 26(b)(1). A corollary to this rule is that material protected by the attorney-client or work product privilege is not discoverable and may be withheld. *See* FED. R.CIV.P. 26(b)(5)(A). When documents produced in discovery are subject to a claim of privilege or protection as trial preparation material, the party claiming privilege may

seek to have the material returned. FED. R.CIV.P. 26(b)(5)(B). The receiving party may then challenge the claim of privilege and retain the disclosed material pending the judicial resolution of the challenge. 6–26 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE—CIVIL § 26.91 (2007) (citing FED. R.CIV.P. 26(b)(5) advisory committee's note (2006)).

The undersigned finds that, in the present case, the Navajo Nation waived their claims of privilege with respect to the twenty-four documents on two distinct ground: (a) injection of the affirmative defenses of waiver, estoppel, and laches during the PIT litigation and (b) failure to take reasonable steps to ensure the confidentiality of the documents. Each of these ground, standing alone, would be sufficient for the trial court to find that the claims of privilege are waived and that the Navajo is not entitled to have their documents returned.

a. The Navajo Nation waived privilege under the doctrine of issue-injection waiver.

The ability of an attorney to provide confidential legal counsel represents one of the oldest common-law privileges, promoting "public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). However, "privilege cannot be used both as a sword and as a shield." *Recycling Solutions, Inc. v. D. C.,* 175 F.R.D. 407, 408 (citations omitted). As a result, a party may not claim privilege over material that they place at issue in litigation. *Estate of Cornwell v. AFL–CIO,* 197 F.R.D. 3, 4 (D.D.C.2000). Specifically, a party waives privilege under a theory of issue-injection waiver when it "raises an affirmative defense that makes [its] intent and knowledge of the law relevant." *United States v. Exxon Corp.,* 94 F.R.D. 246, 248 (D.D.C.1981) (quoting *Anderson v. Nixon,* 444 F.Supp. 1195, 1200 (D.D.C.1978)); *accord Potomac Elec. Power Co. v. California Union Ins. Co.,* 136 F.R.D. 1, 4 (D.D.C.1990).

This circuit applies a "strict" rule pertaining to issue-injection waiver. *SEC v. Lavin,* 111 F.3d 921, 929 (D.C.Cir.1997). With limited exception, once a party voluntarily waives privilege that privilege is "relinquished for all purposes and in all circumstances thereafter." EDNA S. EPSTEIN & MICHAEL M. MARTIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, 76 (2D ED.1988); *accord* 8 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2328(1) at 639 (1961). The party "may no longer use the privilege to prevent access to the communications in question by either the party who successfully challenged the privilege claim or by anyone else in the present or future litigation." PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 9:85, AT 9–295 (1993) (footnotes omitted). Therefore, the rule ensures that a party cannot tactically "pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others." *Permian Corp. v. United States,* 665 F.2d 1214, 1221 (D.C.Cir.1981).

During the PIT litigation in Arizona, the Navajo raised the affirmative defenses of waiver, estoppel, and laches. *Peabody Coal Co.,* 860 F.Supp. at 690. The Hopi subsequently moved the trial court to compel production of all documents that related to these defenses. (Order of Feb. 24, 1994, Hurst Decl., Ex. A–3 at 2.) Over the Navajo's objection on the basis of privilege, Judge Strand found that the validity of the defenses turned on whether the Navajo "knew or should have known of the possibility of liability to the Hopi Tribe in deciding to abate some back taxes and reaffirm a tax waiver with respect to the Peabody Coal Company." (*Id.* at 1–2.) As a result, Judge Strand determined that the Navajo waived privilege by placing their knowledge of the law in controversy and ordered the disclosure of "all information that fairly bears on the affirmative defenses." (*Id.* at 2.) The Navajo neither appealed the ruling ordering disclosure nor withdrew the affirmative defenses at any time during the PIT litigation.

Judge Strand's Order granting the Hopi's Motion to Compel is a judicial finding that the Navajo waived the attorney-client and work product privileges through issue-

injection waiver.[4] Under the doctrine of issue preclusion, such an order is binding on the trial court in this case and forecloses relitigation of whether the Navjo's decision to raise these affirmative defenses resulting in a waiver of privilege. As the Supreme Court has long recognized, "[w]here a court has jurisdiction, it has a right to decide any question which occurs in the cause; and whether its decision be correct, or otherwise, its judgments, until reversed, are regarded as binding in every other court." *Elliott v. Lessee of Peirsol*, 26 U.S. 328, 340, 1 Pet. 328, 7 L.Ed. 164 (1828). Accordingly the undersigned concludes that Judge Strand's finding that the Navajo waived their claims of privilege through issue-injection supports denial of the Navajo's Motion for Protective Order.

> b. The Navajo Nation waived privilege by failing to safeguard the confidentiality of their documents.

▇▇▇ Even if the Navajo did not waive their claims of privilege over the documents through issue-injection, the Navajo waived their claims of privilege when they failed to adequately safeguard the confidentiality of the twenty-four documents. Attorney-client and work product privilege "should only be available at the traditional price: a litigant who wishes to assert confidentiality must maintain genuine confidentiality." *Permian*, 665 F.2d at 1222. A court "will grant no greater protection to those who assert the privilege than their own precautions warrant." *In re Sealed Case*, 877 F.2d 976, 980 (D.C.Cir.1989). This Circuit has held that, to preserve privilege, a party must "jealously guard[ ]" its confidential documents and treat them "like jewels—if not crown jewels." *Id.* Therefore, the party claiming privilege must prevent the introduction of privileged material into the public record. *See Daniels v. Hadley Mem'l Hosp.*, 68 F.R.D. 583, 587 (D.D.C.1975) (concluding that answering

questions concerning privileged communications during deposition waived party's privilege over the communications at trial).

▇▇▇ If a disclosure occurs due to the inadvertence of a third party, waiver occurs unless the privilege-holder promptly takes "reasonable steps to reclaim the protected material." *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 253 (D.D.C.2004) (quoting *Lavin*, 111 F.3d at 930). However, a party is not expected to take reasonable steps to reclaim the documents until it has received notice of the improper disclosure. *Lavin*, 111 F.3d at 930–31. One factor in the "reasonable steps" analysis is the length of the period after the party claiming the privilege "realizes that privileged information has been disclosed." *Aramony v. United Way of Am.*, 969 F.Supp. 226, 237 (S.D.N.Y.1997). An "inordinate delay in claiming the privilege may result in a waiver." *Johnson v. Sea-Land Serv., Inc.*, No. 99–CIV–9161, 2001 WL 897185, at *7 (S.D.N.Y. Aug. 9, 2001). *See also In re Grand Jury (Impounded)*, 138 F.3d 978, 982 (3d Cir.1998) (holding that District Court did not abuse its discretion in finding that party "acted unreasonably in waiting nearly four months to seek a judicial vindication of his assertion of the privilege").

The undersigned finds that the Navajo failed to take jealously guard the twenty-four documents and failed to take reasonable steps to reclaim the documents once they were disclosed by the Hopi. First, the Navajo affirmatively relied on many of the allegedly privileged documents during the PIT litigation. The Navajo introduced the documents into evidence as exhibits and allowed documents to be read aloud in open court without objection. (Hurst Decl., Exs. A–7 to A–12.) Indeed, at one point during the PIT litigation the trial court specifically asked Navajo counsel if they wished to object to the examination of documents in open court to which Navajo counsel responded "[w]e don't have

---

4. The Navajo repeatedly assert that their disclosure of the twenty-four documents to the Hopi was the result of judicial compulsion and therefore cannot give rise to a waiver of the privilege. It is true that involuntary disclosures due to judicial compulsion do not generally constitute waiver. *See, e.g., Equity Analytics, LLC v. Lundin*, 248 F.R.D. 331, 334 (D.D.C.2008). What the Navajo fail to appreciate, however, is that Judge Strand found that waiver occurred because the Navajo raised certain affirmative defenses. Similarly, Defendants are not arguing that the Navajo waived privilege when it complied with Judge Strand's Order. Therefore the Navajo's reliance on judicial compulsion as an exception to waiver is misplaced.

any objection." (Hurst Decl., Ex. A–7 at 97–98.) The Navajo also included these documents in their post-trial briefs and the appellate record before the United States Court of Appeals for the Ninth Circuit. (*Id.* Exs. A–11 to A–13.)

Second, none of the documents disclosed by the Hopi to Defendants carried any indication that they were privileged or filed under seal, as required by the Order issued in the PIT litigation. (*See* Coffield Decl. ¶ 9; Hurst Decl. ¶ 20.) Such carelessness is inconsistent with the Navajo's duty to jealously guard their privileged material. The simple act of labeling these documents as confidential may have prevented these documents from being disclosed to Defendants.

Finally, the Navajo waited two years after the Hopi disclosed the allegedly privileged documents to Defendants before bringing a Motion for Protective Order. The Navajo had constructive notice[5] of these disclosures as early May 2002 when the Hopi began producing documents to Defendants and serving copies of the same of the Navajo. Had the Navajo reviewed these productions or the compact disc that contained scanned images of the disclosed documents, the Navajo would have known that the Hopi inadvertently provided Defendants with the Navajo's privileged documents. This knowing, self-inflicted blindness is further evidence that the Navajo failed to treat its privileged materials like "crown jewels."

2. *The Navajo Nation has not demonstrated good cause for the issuance of a protective order.*

If the party claiming privilege cannot secure the return of the documents, it may alternatively move the court for a protective order limiting the disclosure of documents. *See* FED.R.CIV.P. 26(c). The Court, in its discretion may issue a protective order upon a showing of good cause, which "is only established when the movant demonstrates that disclosure would cause a clearly defined

and serious injury." *Univ. of Mass. v. Roslin Inst.,* 437 F.Supp.2d 57, 60 (D.D.C.2006) (citing *Glenmede Trust Co. v. Thompson).* As a result, "the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements." *Friends of the Earth v. Dep't of the Interior,* 236 F.R.D. 39, 41 (D.D.C.2006) (quoting *Low v. Whitman,* 207 F.R.D. 9, 10–11 (D.D.C.2002)).

The Navajo have not demonstrated good cause for the issuance of a protective order that would limit Defendants' ability to disclose the documents or use them at trial. In light of the fact that these documents are no longer privileged, the Navajo are unable to articulate a clearly defined and serious injury that would result from disclosure. As to Defendants' ability to use these documents as evidence at trial, the Navajo may make a Motion In Limine before the trial court at the appropriate time. Accordingly, the undersigned recommends that the trial court deny the Navajo's Motion in its entirety.

B. *Defendants' Renewed Motion to Compel Production of Documents Withheld by the Navajo Nation*

 If a party objects to a request for production of documents under Federal Rule of Civil Procedure 34(a)(1), the requesting party may move for an order compelling disclosure of the withheld material. FED. R.CIV.P. 37(a). The party that brings the motion to compel "bears the initial burden of explaining how the requested information is relevant." *Jewish War Veterans of the United States of America, Inc. v. Gates,* 506 F.Supp.2d 30, 42 (D.D.C.2007). The burden then shifts to the non-moving party "to explain why discovery should not be permitted." *Id.* If a party has withheld documents on the grounds that they are privileged, the withholding party "bears the burden of proving the communications are protected." *In re Lindsey,* 158 F.3d 1263, 1270 (D.C.Cir. 1998).

---

5. Constructive notice is defined as "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of." BLACK'S LAW DICTIONARY (8th ed.2008). In this case, the Navajo, as the privilege-holder, had a duty to supervise the Hopi's production of documents to Defendants by—at a minimum—conducting an after-the-fact review of documents that had been produced and raising privilege issues in a timely manner.

Defendants move this Court for an order compelling the Navajo to produce: (1) all documents that the Navajo produced to the Hopi during the PIT litigation; (2) 578 documents, including allegedly privileged communications and work product, relating to the same subject matter as the documents that the Navajo produced to the Hopi during the PIT litigation or to Defendants in the present litigation; and (3) all documents, regardless of privilege claims, that bear on the Navajo's claims of fraudulent concealment and justifiable reliance in the instant litigation. (Def.'s Mem. at 33–34.) For the reasons set forth below, the undersigned recommends the Court grant Defendants' Renewed Motion to Compel as to the first two categories of requested documents and deny their Motion as to the third category.

1. *Defendants are entitled to all document that the Navajo produced to the Hopi during the PIT litigation.*

Defendants seek all documents that the Navajo produced to the Hopi during the litigation before the District Court in Arizona. (Def.'s Mem. at 10.) The Navajo has refused to produce these documents on the grounds that they are privileged, stressing that the Navajo's disclosure of these documents to the Hopi was "involuntary and compelled by a court order." (Pl.'s Opp'n at 11.) As the undersigned found above in connection with the Navajo's Motion for Protective Order, however, the Navajo waived they claims of privilege through issue-injection and/or by failing to safeguard the confidentiality of the documents. The undersigned further found that, under the strict rule of waiver in this Circuit, the Navajo have "relinquished" they claims of privilege "for all purposes and in all circumstances." EDNA S. EPSTEIN & MICHAEL M. MARTIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, 76 (2D ED.1988). Because the Navajo's only basis for withholding this category of documents is privilege, and because the Navajo waived privilege, the Navajo cannot meet their burden of demonstrating that the documents should be withheld. Accordingly, the undersigned recommends that the trial court grant Defendants' Motion with respect to the first category of documents.

2. *Defendants are entitled to the 578 documents that are related to the same subject matter as the PIT documents.*

Defendants also seek 578 documents, including allegedly privileged communications and work product, relating to the same subject matter as the documents that the Navajo produced to the Hopi in the PIT litigation or to Defendants in the instant litigation. (Def.'s Mem. at 15. *See also* Hurst Decl., Ex. A (setting forth list of documents).) Specifically, Defendants seek documents pertaining to two subjects: "(1) the lease negotiations for the 1981–87 period, including tax waivers and pre–1987 taxes allegedly owed by Peabody; and (2) the 1984 Royalty Rate Appeal." (Def.'s Mem. at 17 (citations omitted).) Defendants have submitted charts that detail how the documents they seek are related to the same subject matter as the documents that the Navajo have already disclosed. (*See* Hurst Decl., Exs. A–20 to A–23.) After reviewing these charts and other material submitted in support of Defendants' Motion, the undersigned concludes that the 578 documents are related to the same subject matter as materials that the Navajo previously disclosed to either the Hopi or Defendants. The only remaining question is whether Defendants are entitled to any related privileged documents under a theory of subject matter waiver.

The doctrine of subject matter waiver dictates that once a party waives privilege over a document, an adverse party may discover all documents and communications arising out of the same transaction. *Compare In re Sealed Case*, 676 F.2d 793, 809 (D.C.Cir.1982) (concluding disclosure of report rendered all documents used to support that report discoverable), *with Fed. Trade Comm'n v. Lukens Steel Co.*, 444 F.Supp. 803, 807 (D.D.C.1977) (denying motion to compel production of documents ancillary to material previously disclosed to adversary). Subject matter waiver prevents a party from selectively disclosing materials to confuse and mislead an adverse party. *Bowles*, 224 F.R.D. at 257. The trial court "retains broad

discretion in deciding the appropriate scope of a [subject matter] waiver" and may limit the scope of any such waiver if the resulting disclosure would unfairly provide a party "with a substantial strategic windfall" of discovery material *In re UMW Employee Benefit Plans Litig.*, 159 F.R.D. 307, 309, 312 (D.D.C.1994) (citing *In re Sealed Case*, 877 F.2d at 981).

 The doctrine of subject matter waiver applies differently to material withheld under the attorney-client privilege than to material withheld under the work product doctrine. *See In re UMW*, 159 F.R.D. at 312. The latter is broader, and consequently "a waiver of the attorney-client privilege is not necessarily a waiver of work-product protection." *Chubb Integrated Sys. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C.1984). The difference in breadth may be attributed to the different goals that each privilege serves: "the attorney client privilege exists to protect confidential communications," while the work product privilege "promote[s] the adversary system by safeguarding the fruits of an attorney's trial preparations." *United States v. AT & T Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980).

### a. Attorney–Client Privilege

 The attorney-client privilege demands adherence to "genuine confidentiality." *Permian Corp.*, 665 F.2d at 1222. Thus, *any* disclosure of attorney-client material will be considered "a waiver of the privilege as to all communications relating to the same subject matter." *In re UMW*, 159 F.R.D. at 312 (citing *In re Sealed Case*, 877 F.2d at 980–81). A document will be considered disclosed by a plaintiff when the "defendant has learned the 'gist' of the documents's contents." *Chubb*, 103 F.R.D. at 63. Subject matter waiver of attorney-client material will occur regardless of the party's intent when making the disclosure. *Id.* at 67 (remarking that "the weight of authority recognizes that waiver can occur through inadvertence" as well as voluntary disclosures).

 In this case, the Navajo disclosed documents to both the Hopi and to Defendants, thereby failing to maintain the confidentiality of the attorney-client relationship.

First, during the PIT litigation, the the Navajo embarked on a litigation strategy that squarely put privileged material at issue. Second, the Navajo placed the allegedly privileged material in the public record, and in the hands of Defendants, through active disclosures and passive neglect. The Navajo utilized privileged material during trial and on appeal, failed to ensure that the documents disclosed to Defendants bore any mark denoting their privileged status, and chose not to review a single log detailing the disclosures between the Hopi and Defendants. Furthermore, as Defendants acknowledged during the oral argument on their Motion, they, at a minimum, learned the gist of these documents during the more than two years that they were in their possession. Because these documents are no longer confidential, Defendants are entitled to all documents relating to the same subject matter as the documents that were once protected by the attorney-client privilege.

### b. Work Product Documents

 While disclosure to a third party may automatically result in subject matter waiver for material withheld under attorney-client privilege, "it should not suffice in itself for waiver of the work product privilege." *AT & T Co.*, 642 F.2d at 1299. The work product privilege "balance[s] the needs of the adversarial system," weighing the need to protect trial preparation material against "the general interest in 'revealing all true and material facts relevant to the resolution of a dispute.'" *Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4, 7 (D.D.C.2004) (quoting *Hager v. Bluefield Reg'l Med. Ctr., Inc.*, 170 F.R.D. 70, 75 (D.D.C.1997)). In evaluating subject matter waiver with respect to work product documents, a court must consider (1) whether the party claiming work product protection seeks to use the privilege in a way that is inconsistent with the purpose of the doctrine; (2) whether the party claiming work product protection had a reasonable basis for believing the disclosed material would be kept confidential by the third party to whom it disclosed the materials; and (3) whether waiver of work product protection would tread on any policy elements inherent

in the doctrine. *Navajo Nation,* 209 F.Supp.2d at 286 (quoting *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1372 (D.C.Cir. 1984)). As with attorney-client privilege, subject matter waiver of work product will occur even if the party did not intend to waive privilege through disclosure. *Daniels v. Hadley Mem.'l Hosp.,* 68 F.R.D. 583, 587 (D.D.C.1975).

The first and third factors support a finding a subject matter waiver because nondisclosure of this category of documents would be inconsistent with the adversarial system. The adversarial system suffers when a party attempts to mislead an opponent through selective disclosures. *Bowles,* 224 F.R.D. at 257. Thus,

> if a party seeks to use the doctrine not as the "shield" that it was intended to be, but rather as a "sword" to unfairly influence the outcome of the proceedings, then the integrity of the adversarial system is most effectively preserved by removing the doctrine from that party's litigation arsenal.

*General Elec. Co. v. Johnson,* No. Civ.A.00–2855(JDB), 2006 WL 2616187, at *18 (D.D.C. Sept. 12, 2006). Additionally, allowing a party to disclose material in one litigation and not in another litigation concerning the same issue "would encourage legal maneuvering ... to the detriment of a 'healthy' adversarial system." *Navajo Nation,* 209 F.Supp.2d at 287.

As demonstrated by the charts that Defendants have submitted at Exhibits A–20 through A–23, the Navajo, throughout the long history of litigation between these parties, selectively disclosed work product documents in pursuit of its claims and defenses while simultaneously withholding materials that were closely related to those documents. The undersigned agrees with Defendants' argument that "[w]ithout a complete picture of [the facts in the disclosed documents] through subject matter waiver, the Navajo

Nation retains the ability to manipulate the truth by selectively withholding the most prejudicial documents." (Def.'s Mem. at 17–18.) This conduct is an abuse of the work product privilege and inconsistent with the adversarial system. Far from giving Defendants a windfall, compelled disclosure of the withheld documents will place Defendants on a level playing field.

As to the second factor, the undersigned finds that, in light of the Navajo's assertion of the affirmative defenses in the PIT litigation and its subsequent failure to safeguard its privileged materials, the Navajo could not have had a reasonable belief that their privileged material would be kept confidential. The Navajo certainly do not believe that they waived their claims of privilege, arguing repeatedly that any disclosures of privileged material were compelled or inadvertent. However the undersigned does not find that the Navajo's belief is reasonable in light of the borderline-negligent manner in which the Navajo treated their confidential documents. Accordingly the second factor supports a finding of subject matter waiver.

3. *Defendants are not entitled to additional privileged documents under a theory of issue-injection waiver.*

 As discussed above, a party waives privilege under a theory of issue-injection waiver when it "raises an affirmative defense that makes [its] intent and knowledge of the law relevant." *Exxon Corp.,* 94 F.R.D. at 248 (quoting *Anderson,* 444 F.Supp. at 1200); *accord Potomac Elec. Power Co.,* 136 F.R.D. at 4. Once a party "affirmatively puts privileged information in controversy," the documents containing that privileged information become discoverable.[6] *Estate of Cornwell,* 197 F.R.D. at 4 (citations omitted).

Defendants allege that the Navajo affirmatively placed attorney-client and work prod-

---

6. To find a waiver of work product protection through issue-injection, the party seeking the privileged material must also show that: (1) the material sought is relevant to the instant litigation; (2) the party has a "substantial need for the materials to prepare its case"; and (3) the party "cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R.CIV.P. 26(b)(3)(A). *See also United States ex rel Purcell v. MWI Corp.,* 232 F.R.D. 14, 18 (D.D.C. 2005). Because the undersigned concludes that the Navajo have not placed privileged information at issue by asserting claims of fraudulent concealment and affirmative reliance, it is unnecessary to determine whether these additional elements are satisfied.

**50**

uct material at issue by raising claims of fraudulent concealment and affirmative reliance in response to Defendants' statute of limitations defense. (Def.'s Mem. at 27.) Fraudulent concealment, as a basis for tolling the statute of limitations, requires the Navajo to demonstrate that they "neither knew nor, in the exercise of due diligence, could reasonably have known" that Defendants allegedly violated RICO. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). To prevail on their claim that they affirmatively relied on Defendants' representations regarding the Royalty Rate Appeal and 1981–1987 lease negotiations, the Navajo must prove that their reliance was not based on other sources, including the advice of counsel. *Minebea Co. v. Papst*, 355 F.Supp.2d 518, 524 (D.D.C.2005). Defendants assert that the Navajo cannot prevail on these claims without putting forth evidence of their attorneys' conduct and advice. (*See* Def.'s Mem. at 30–31.)

The undersigned finds that the Navajo did not affirmatively place the conduct or advice of their counsel at issue through their claims of fraudulent concealment and affirmative reliance. Such evidence may be relevant to the Navajo's claims, but "[a]dvice [of counsel] is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Cornwell*, 197 F.R.D. at 5 (quoting *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994)). Although Defendants describe at length how privileged communications are relevant to the Navajo's claims, the undersigned has not located anything in the Navjo's pleadings to suggest that the Navajo affirmatively placed these communications at issue. Because the Navajo's claims of fraudulent concealment and affirmative reliance did not give rise to issue-injection waiver, the undersigned recommends that the trial court deny Defendants' Renewed Motion to Compel with respect to this category of documents.

### III. *Conclusion*

The undersigned recommends that the trial court deny the Navajo Nation's Motion for Protective Order and Order Requiring the Return of the Navajo Nation's Privileged Materials because the Navajo waived their claims of privilege as to the twenty-four documents at issue in their Motion and because the Navajo have not demonstrated good cause for the issuance of a protective order.

The undersigned further recommends that the trial court grant Defendants' Renewed Motion to Compel Production of Documents Withheld by the Navajo Nation with respect to (1) all documents that the Navajo disclosed to the Hopi during the PIT litigation and (2) the 578 documents relating to the same subject matter as the documents that the Navajo disclosed to the Hopi during the PIT litigation or to Defendants during the instant litigation. Finally, the undersigned recommends that the trial court deny Defendants' Renewed Motion to Compel with respect to privileged documents that bear on the Navajo's claims of fraudulent concealment and justifiable reliance.

### IV. *REVIEW BY THE DISTRICT COURT*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: ten business days (excluding weekends and holidays) plus three calendar days (including weekends and holidays). *See CNPq– Conselho Nacional de Desenvolvimento*

*Cientifico e Technologico v. Inter–Trade, Inc.,* 50 F.3d 56, 58 (D.C.Cir.1995) (per curium).

